[Crim. Nos. 35724, 35356. Second Dist., Div. Two. June 18, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ELDON COLERIDGE COFFEE, JR., et al.,
Defendants and Appellants.

**COUNSEL**

Robert E. Moore, Jr., Robert M. Nadel, under appointments by the Court of Appeal, and Reed & Shaw for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**COMPTON, J.**—Defendants Coffee and Shirley Faye James pleaded guilty to the crime of first degree robbery. Coffee admitted to an allegation that he had used a firearm in the commission of the offense.

As a part of a plea bargain, an allegation that defendant Coffee had suffered two prior felony convictions for burglary and grand theft from the person, were struck from the information. As to defendant James, the allegation of use of a firearm was struck as was an allegation that she had suffered prior convictions for burglary and aiding and abetting a bank robbery. It also appears that the bargain included a promise by the district attorney not to file an additional unrelated felony charge against Coffee.

■ On appeal defendants present only one issue of arguable merit and that is that the trial court erred in refusing to suppress certain evidence which police officers retrieved from a motel at which defendants were staying at the time of their arrest. They contend that their pleas of guilty were the result of that ruling.

At the hearing held in the superior court pursuant to Penal Code section 1538.5, subdivision (i), defendants moved to suppress a hat, a shirt and a black leather pouch with its contents—a hand gun and ammunition.

The above mentioned items were seized by the police under the following circumstances:

At approximately 3 a.m. on July 24, 1978, the female night clerk at the Vagabond Motel on East Colorado Boulevard in the City of Pasadena, was robbed at gun point by two individuals—a male and a female. The male suspect was carrying a black pouch from which he produced the gun.

When the police responded to her call she gave the officer, one David Foster, a detailed description of the suspects and of a vehicle she had seen driving slowly by the location sometime prior to the robbery. At the time she saw the vehicle she observed only the driver and he was the same person as the male suspect who robbed her. Included in the physical description of the suspects was the fact that the male wore a

white-brimmed hat and a long sleeved dark shirt. The female suspect wore a quantity of turquoise jewelry.

Officer Foster broadcast the description of the suspects and the vehicle. That broadcast was received by another Pasadena police officer who in turn relayed the information, in person, to a Deputy Sheriff Denny patrolling the unincorporated area just east of the City of Pasadena.

Deputy Sheriff Denny had earlier that evening taken a report of a robbery at a Bob's Big Boy Restaurant by three suspects—two males and one female. The description of the female and one of the males matched the description of the two suspects in the robbery at the Vagabond Motel.

Shortly thereafter Deputy Sheriff Denny observed the described vehicle sitting in a motel parking area about three-fourths of a mile from the Vagabond Motel. He radioed for assistance and a Deputy Sheriff Van Etten responded. The two deputies checked the hood of the vehicle and found it to be still warm.

Deputy Sheriff Denny went to the motel office and talked to the manager. Although there was a language difficulty in the conversation he learned that two males and one female, all of the same race as the described suspects, were in the motel unit 4-B, which corresponded to the parking stall holding the suspect vehicle.

While Denny was so engaged, Van Etten observed a male come from the area of unit 4-B, stop and motion to another male who then joined him and the two started to walk together. Deputy Van Etten drew his revolver and identified himself and placed the two against a parked vehicle. The two men were defendant Coffee and the husband of defendant James. Deputy Denny then returned to the area. He called for assistance from the Pasadena police. Several Pasadena officers arrived including Pasadena Officer Foster.

Deputy Sheriff Denny learned from James' husband that she, defendant James, was in the motel unit. The unit had a porch surrounded by a large amount of shrubbery and the area was very dark. As Denny approached the door of the bungalow he heard a woman sobbing. It turned out to be defendant James who was seated on the steps of the

porch. Denny took her into custody and returned to the area where the male suspects were being held.

The three suspects matched the physical description of the suspects in the two robberies although neither of the male suspects was wearing a hat. Defendant James was wearing turquoise jewelry. None of the suspects was carrying a gun.

Believing that there might be yet another suspect, with the gun still in the bungalow, the officers with drawn guns entered the bungalow using a key they obtained from defendant James. They looked in the closet and under the bed. They found no other suspect but did find the white-brimmed hat and the long sleeved dark shirt hanging in plain sight in the closet, and the black pouch containing the gun and ammunition under the bed.

At this point we pause to point out that defendants do not challenge the fact that the officers had probable cause to arrest the three individuals. Based upon the descriptions, the arrestees' connection with the vehicle used in the robbery at the Vagabond Motel and the fact that the two reported robberies each had a female participant, a not too frequent occurrence, the officers had probable cause to arrest the suspects. Defendants' only contention is that the officers' entry into the motel without a warrant was improper.

In *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], it was held that the scope of a search incident to an arrest was limited to the person of the arrestee and the area immediately surrounding him and within his reach. It was further held that the officer making the arrest could seize anything that was in plain view from the vantage point of the officer.

The California Supreme Court in *People* v. *Block* (1971) 6 Cal.3d 239 [103 Cal.Rptr. 281, 499 P.2d 961], applying the *Chimel* rule to an arrest of a suspect inside one room of a dwelling, held that it was proper for an officer to enter other portions of the dwelling when he had reasonable grounds to believe that other suspects *might be* on the premises.

*People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], added another dimension to the problem in holding that an ar-

rest without a warrant effected inside a dwelling is per se unreasonable unless there are "exigent circumstances." The major objective of the rule in *Ramey* is to prevent circumvention of the requirement of a search warrant by the timing of an arrest so that entry into a dwelling can be effected.

One "exigent circumstance" is when a proposed arrestee flees into a dwelling and the officers pursue him. (*People* v. *Escudero* (1979) 23 Cal.3d 800 [153 Cal.Rptr. 825, 592 P.2d 312].) Additionally, "exigent circumstances" are described as a situation where swift action is required to forestall imminent escape of a suspect, destruction of evidence or danger to life or property.

In *People* v. *Superior Court* (*Bowden*) (1976) 65 Cal.App.3d 511 [135 Cal.Rptr. 306], officers had reasonable cause to arrest a group of five persons known to be armed who were inside a garage. It was there held that it was proper for the officers to order them out of the garage. When five persons emerged from the garage one officer entered to determine if other suspects might be still in the garage. In so doing he observed, in plain sight, evidence which was seized. The *Bowden* court dealt only with the issue of the police officers' right to order the persons out of the garage and found that the officers acted reasonably.

Following *Bowden*, the Supreme Court in another appeal originating in the same case held that, under the authority of *People* v. *Block, supra,* and *People* v. *Sommerhalder* (1973) 9 Cal.3d 290, [107 Cal.Rptr. 289, 508 P.2d 289], the officers' entry into the garage to search for additional suspects was also proper. The court made the observation that anyone remaining in the garage would have access to deadly weapons and the officers could not be sure that the five persons who emerged included all of the five suspects which the officers had originally sought to arrest. (*People* v. *Mack* (1980) 27 Cal.3d 145 [165 Cal.Rptr. 113, 611 P.2d 454].)

We examine the officers' actions here against the background of the above mentioned principles, keeping in mind that the standard is "reasonableness" based on the facts available to the officers at the time they acted. (*People* v. *Block, supra*; *People* v. *Bagwell* (1974) 38 Cal.App.3d 127 [113 Cal.Rptr. 122].)

In recapitulating the facts as seen through the eyes of the officers, we start with the point that it is a matter of common knowledge that hold-

up gangs often operate in varying numbers and combinations and the victim of a robbery does not always see all of the participants.

On the night in question there had been two armed robberies perpetrated by persons of similar descriptions, each involving a female participant, yet one robbery included two observed participants and one robbery involved three observed participants.

When the officers located the vehicle used in one of the robberies and learned that the persons connected with that vehicle, and who were in the bungalow, consisted of a female and two males, they could have ordered the occupants to exit. (*People* v. *Superior Court* (*Bowden*), *supra.*) The fact that the three individuals came out voluntarily did not alter the situation as to the officers' right to enter and search for additional suspects. (*People* v. *Sommerhalder, supra.*)

The specific and articuable facts which gave rise to the officers' belief that yet another suspect might be inside the bungalow were that no gun was recovered from the three suspects who came out and neither of the males was wearing the distinctive hat which had been seen by the clerk at the Vagabond Motel.

As in *People* v. *Mack, supra,* the officers could not be sure that the three persons who emerged included all of the persons who had participated in the two robberies and they knew that if a fourth suspect remained inside he had access to a firearm.

The trial court found on the basis of substantial evidence that the officers' belief and conduct was reasonable. We agree with the trial court's conclusion. The officers' conduct under the circumstances was eminently reasonable. The only justification for the exclusionary rule is to induce reasonable conduct on the part of the police and to promote compliance with the spirit and purpose of the Fourth Amendment to the United States Constitution. The rule should be applied in a common sense fashion with an eye to advancing those objectives and not simply reduced to a game of "Simon Says." The attempt to apprehend armed robbery suspects is never a game but is deadly serious business.

We conclude that suppression of the evidence under the circumstances of this case would not advance by one whit the cause of ordered liberty or constitutional guarantees but might result in the release of

two hardened ex-felons who admittedly perpetrated a vicious armed robbery which jeopardized the life of an innocent female clerk, thus further weakening the confidence of law-abiding citizens in the criminal justice system's ability to protect their lives and property.

The judgments are affirmed.

Roth, P. J., and Beach, J., concurred.