652 P.2d 531
**STATE of Arizona, Appellee,**

v.

**Edward Gerard McLOUGHLIN, Appellant.**

**No. 5158.**

Supreme Court of Arizona, In Banc.

Sept. 20, 1982.

Rehearing Denied Oct. 26, 1982.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Asst. Atty. Gen., Chief Counsel, Crim. Div., Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Michael E. Benchoff, Phoenix, for appellant.

GORDON, Vice Chief Justice:

Appellant stands convicted of first degree murder, A.R.S. § 13–1105, and first degree burglary, A.R.S. § 13–1508. The trial court sentenced him to death for the murder and to ten years imprisonment for the burglary. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and A.R.S. § 13–4031. Because of jury misconduct, we reverse the conviction and sentences and remand for a new trial. Other issues likely to recur on retrial are also addressed.

The charges are premised on a felony murder at a liquor store in Scottsdale, Arizona. One night, Edgar Kuykendall came out of the back room of the store where he had been cleaning. Across the store, he saw appellant pointing a gun at the victim who was standing behind the register. Kuykendall heard the victim say, "Give me a little time," as the victim tried to open the cash register. Within a few seconds, appellant fired one shot at the victim which fatally wounded him.

Appellant rushed out of the store and ran to a self-service car wash north of the store. Witnesses saw him run from the store, gun in hand, to a truck waiting for him in a car wash bay. He jumped into the passenger side of the truck which was being driven by his accomplice Donald K. Nelson. See *State v. Nelson,* 129 Ariz. 582, 633 P.2d 391 (1981). The truck pulled out of the car wash and headed north.

Two witnesses riding together in a vehicle followed the truck long enough to obtain its license plate number. The witnesses returned to the store and relayed the plate number to Kuykendall who was already on the telephone talking to the police. A description of appellant, his jacket and gun, the truck, and the license plate number[1] was broadcast over the police radio.

Within a few minutes, a police officer spotted the truck and stopped it. Appellant and Nelson were returned to the store parking lot. No one recognized Nelson, but the witnesses identified appellant as the man they had seen in or running from the store.

Appellant was tried separately from Nelson. Appellant's defense was temporary insanity brought on by hypoglycemia and the use of alcohol and drugs. This appeal follows from his convictions.

## JURY MISCONDUCT

The jury deliberated over two days. During the night between the two sessions, one juror was told by an unidentified third party that if appellant was found not guilty by reason of insanity, he would go free. This juror passed along this information to the rest of the jury at the next day's deliberations.

■■■ A new trial may be granted whenever a juror commits misconduct by "[r]eceiving evidence not properly admitted during the trial." Ariz.R.Crim.P. 24.-1(c)(3)(i). In this context, "evidence" means any information likely to be considered by the jury in determining the guilt or innocence of the defendant. Thus, the rule encompasses both information received by the jury that could generally be admissible but was not admitted at the trial in question and information that is always in-

---

1. The witnesses reported the license plate number as 2 NT–837, but it was mistakenly broadcast as 2 NP–837.

admissible because it is legally irrelevant, too prejudicial, or the subject of an exclusionary rule or statute.[2]

■ We need first determine whether the instant case fits within the bounds of Rule 24.1(c)(3)(i). In appellant's case, the information received concerned punishment and the disposition of appellant should he be found insane. Under Arizona law, this information is always inadmissible. *See State v. Jensen,* 111 Ariz. 408, 531 P.2d 531 (1975). Appellant's defense was temporary insanity, and a form of verdict for not guilty by reason of insanity was given to the jury. The information came from outside the jury.[3] Under these circumstances, the information received by the juror and transmitted to the rest of the jury is of the type likely to be considered in the guilt-innocence determination. The case, therefore, falls within Rule 24.1(c)(3)(i).

When a case falls within Rule 24.1(c)(3)(i), "the defendant is entitled to a new trial if it cannot be concluded beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict." *State v. Poland,* 132 Ariz. 269, 283, 645 P.2d 784, 798 (1982). We cannot say beyond a reasonable doubt that the information concerning the effect of an acquittal by reason of insanity did not contribute to the verdict. This Court in *Poland* held that a jury receiving extraneous information as to prior federal convictions arising out of the same acts for which a defendant is now on trial in state court is "inherently prejudicial." We now hold that it is also inherently prejudicial to a defendant when a jury receives information that the defendant will go unpunished and untreated if found not guilty by reason of insanity. The probability is too great that a jury will rely on such legally irrelevant information to convict a defendant, regardless of sanity at the time of the crime, so that his or her crime will not go unpunished.

The jury was instructed, "In deciding whether the defendant is guilty or not guilty, do not consider the possible punishment." The state argues that because of this instruction, the jury would not have considered what would happen to appellant if it acquitted him because of insanity. The burden on the state is to prove beyond a reasonable doubt that the evidence improperly received did not contribute to the verdict. *Poland, supra.* It is quite possible that the jury would have interpreted the "punishment" instruction to apply only to the punishment imposed if appellant was convicted and not to the "nonpunishment" the jury believed appellant would receive if he was acquitted by reason of insanity. If the jury did believe the instruction would apply, the fact that one juror relayed to the other jurors the extraneous information about a not guilty by reason of insanity verdict implies that the instruction was not followed. The state has not carried its burden. For these reasons, a reversal of appellant's conviction and a remand for a new trial is necessary in this matter.

■ Appellant argues that he should have received an instruction correctly stating what would have happened had he been acquitted by reason of insanity (civil commitment proceedings would have begun under Ariz.R.Crim.P. 25) and that this would have avoided the problem caused by the juror misconduct. We disagree and adhere to our decisions in *State v. Doss,* 116 Ariz. 156, 568 P.2d 1054 (1977); *State v. Jensen,* 111 Ariz. 408, 531 P.2d 531 (1975); and *State v. Peats,* 106 Ariz. 254, 475 P.2d 238 (1970). The disposition of a defendant upon the jury's verdict has nothing to do with the defendant's guilt or innocence and should

---

**2.** It must be remembered that the rule applies only when the jury receives information from an outside source during the course of the trial or during deliberations. Jurors may rely on their common sense and experiences during deliberations. Even though this information was not admitted at trial, it is discoverable during voir dire. If some action need be taken because of a juror's background, the juror can be stricken for cause or an attorney can use a peremptory strike. But when a juror receives outside information after being impanelled, that juror is no longer the person approved for jury duty by the voir dire process.

**3.** See note 2, *supra.*

never be considered by the jury in its deliberations.

## ISSUES PREVIOUSLY DETERMINED

Appellant raises objections to: (1) the destruction of the tape recordings of the police radio broadcasts concerning his case; (2) the warrantless search of his codefendant's truck; and (3) the "show up" identification of him at the liquor store parking lot. We dealt with these issues previously when we affirmed his codefendant's convictions. *State v. Nelson,* 129 Ariz. 582, 583, 633 P.2d 391 (1981). Appellant has not persuaded us that we should change our *Nelson* rulings that the destruction of the tapes and the warrantless search were not error.

In *Nelson,* we stated in dictum that the show up identification procedure used in this case was proper. We now hold it was proper as applied to appellant. This Court has consistently held that show up identification procedures are permissible if they take place near in time to criminal offense or at the scene of the crime. *State v. Hicks,* 133 Ariz. 64, 649 P.2d 267 (1982); *State v. Daniels,* 106 Ariz. 224, 474 P.2d 815 (1970). Such a procedure allows the police to either have the culprit identified while the witness has a fresh mental picture of him or her or else release an innocent person and continue searching for the culprit before he or she escapes detection. *State v. Gastelo,* 111 Ariz. 459, 532 P.2d 521 (1975). A show up identification will be admissible if reliable, and the factors to examine in determining reliability are: (1) the amount of time elapsed between the observation and the identification; (2) the accuracy of description given by the witness before the show up; (3) the degree of the witness' certainty as to the accuracy of the identification; (4) the witness' opportunity to view the culprit at the time of the crime; and (5) the witness' degree of attention at the time of the crime. *Hicks, supra.*

There was no undue suggestion in the instant case. The witnesses were not grouped together in the parking lot but were scattered around it. The show up occurred within minutes of the crime and at the location of the crime. Appellant generally fit the description given by the witnesses. All of the witnesses were first shown Nelson, the driver, whom none could identify. Then the witnesses were shown appellant whom Kuykendall identified as the assailant in the store and whom the other witnesses identified as the man they saw run from the store to the truck parked at the car wash. Although none of the witnesses had an opportunity to view the culprit for long, they all had a reason to have their attentions riveted on him. The procedure was properly conducted and was sufficiently reliable.

## PROSECUTOR'S CLOSING ARGUMENT

Appellant argues that the following portion of the prosecutor's closing argument deprived him of a fair trial because it "pandered to the juror's fears as to the defendant's dangerousness" if he was acquitted by reason of insanity and released:

"I am glad that Mr. McLoughlin isn't a more professional robber than he turned out to be. I am glad he is not walking the streets right now, because if he is, I would hope he would have more than 31 cents in his pocket, because if he doesn't, he is liable to shoot somebody for it."

Appellant has taken this quotation out of context; we disagree with his characterization of it.

One of the defense psychiatrists stated several times that appellant must have been insane at the time of the crime because no sane, "professional" robber would have committed the crime the way he did. The basis for this opinion was that appellant did not take the appropriate steps to conceal his identity and he shot the victim without apparent motive. Before the prosecutor made the remarks in question, he argued that the fact appellant was "caught red-handed" did not make him insane and that the shooting of the victim was a product of appellant's antisocial personality. There had also been evidence that appellant and his codefendant had 31 cents between them when arrested. The remarks in question,

taken in context, were intended to express relief that appellant was not so professional as to escape detection and to show that his financial condition provided a motive for the crime. These thoughts were based on the evidence and were appropriate in closing argument.

Nevertheless, the remarks could also be construed to refer to future conduct. Although we do not find these remarks to be error, we suggest that if they are used again, the prosecutor take care to choose words that cannot be construed to refer to future conduct.

## COURT'S INQUIRY INTO JURY VOTE

■ After the jury had deliberated for one and one-half days, the trial judge sent a note to the jury requesting the numerical vote of each ballot the jury had taken (without indicating whether the votes were for guilty or not guilty). This Court recently eschewed the practice of inquiring into the numerical division of a deliberating jury for any reason. *State v. Roberts,* 131 Ariz. 513, 642 P.2d 858 (1982). Presumably, the trial court will follow the dictates of *Roberts* when appellant is retried.

## USE OF DR. GRAY

Dr. Howard Gray, a psychiatrist, testified on behalf of the state as an expert witness. When the state moved to have him appointed as an expert, it was discovered that he had treated appellant for about six months when appellant was fifteen years old (about five years before the present offenses). Over appellant's objections, Dr. Gray was appointed as an expert, he examined appellant, and he testified at trial. The state avoided mention of the prior treatment in its direct examination of Dr. Gray and avowed that his testimony was not based at all on the prior treatment of appellant.

Appellant argues that the use of Dr. Gray violated his confrontation clause rights under the Sixth Amendment to the United States Constitution and his due process rights under the Fourteenth Amendment. To show Dr. Gray's bias and to impeach his testimony, appellant contends he was forced to waive the physician-patient privilege, A.R.S. § 13-4062(4), and cross-examine based on the prior treatment.[4] On the other hand, standing on the privacy interest protected by the physician-patient privilege would have meant foregoing cross-examination on the prior treatment despite its potential to rebut Dr. Gray's testimony. Thus, the use of Dr. Gray placed appellant in a position where he could not simultaneously assert his constitutional right of confrontation and protect his statutory privacy interest created by the physician-patient privilege.

Although a jury is entitled to have the entire picture of a defendant who pleads insanity, *State v. Rodriguez,* 126 Ariz. 28, 612 P.2d 484 (1980), this Court has not held that the plea of insanity negates the physician-patient privilege. The state has not argued that Dr. Gray was the only available psychiatrist it could find or that he had some special expertise. Also, the state avowed that it did not wish Dr. Gray to rely on the prior treatment in reaching his current opinion as to appellant's sanity. Appellant vigorously objected to Dr. Gray's appointment as an expert. Because we have reversed this case and remanded it for a new trial, we need not decide at this juncture whether Dr. Gray testifying would infringe appellant's constitutional and statutory rights in all instances. But having considered the state's failure to show a special need for Dr. Gray's testimony and the serious confrontation right issues raised by the state's use of him, we suggest that the state seek another expert witness on retrial.

## THE INSANITY INSTRUCTION

Based on Recommended Arizona Jury Instruction (Criminal) 5.02, the trial court instructed the jury as follows:

appellant doses of major tranquilizers at the high end of the moderate dosage scale during his 5–6 week hospital stay.

**4.** For instance, appellant's trial attorney questioned Dr. Gray about the nature of appellant's illness at the time Dr. Gray treated him and about the fact that Dr. Gray prescribed for

"The state must prove beyond a reasonable doubt that the defendant was sane.

"If you determine that the defendant did not know right from wrong, or if you determine that the defendant did not know the nature and probable results of his act, then he was not sane.

"If you determine that you are not convinced beyond a reasonable doubt that the defendant was sane, you must find him not guilty by reason of insanity."

Appellant asserts that the instruction unconstitutionally shifted the burden of proof on insanity to the defense.

 The instruction is a correct statement of the law and does not place the burden of proof on the defense. Moreover, the prosecutor reminded the jury in closing argument that the state has the burden of proof on insanity, the proof must be beyond a reasonable doubt, and the burden never shifts. But the wording of the instruction could be confusing, and we recommend the following instruction be used:

"The State must prove beyond a reasonable doubt the defendant was sane.

"If you are not satisfied beyond a reasonable doubt that the defendant did know right from wrong and that the defendant did know the nature and results of his acts, then the state has not borne its burden of proof to show that the defendant was sane.

"If you are not convinced beyond a reasonable doubt that the defendant was sane, you must find him not guilty by reason of insanity."

## LESSER INCLUDED INSTRUCTIONS

Appellant offered instructions on second degree murder, manslaughter, and negligent homicide, but the trial court refused them. Appellant contends that *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), requires lesser included instructions in any capital case, even felony murder. This argument was rejected in *State v. Arias,* 131 Ariz. 441, 641 P.2d 1285 (1982), and we adhere to the holding in that case.

## OTHER ISSUES

Appellant presents several other issues in his briefs. We decline to consider them at this time as a resolution of them is unnecessary to a new trial.

The convictions and sentences are reversed and the case is remanded for a new trial.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.