[Crim. No. 43502. Second Dist., Div. One. Aug. 9, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILLIP VANCE McGRIFF, Defendant and Appellant.

1152

**COUNSEL**

Terrence J. Bennett for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gary R. Hahn and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CARSTAIRS, J.*—Appellant, Phillip Vance McGriff, appeals from a judgment entered on a jury verdict finding him guilty of the following offenses. Counts 1 and 2, robbery, in violation of Penal Code section 211, count 3, ex-convict in possession of a firearm in violation of Penal Code section 12021, count 4, violation of Vehicle Code section 10851, the unlawful taking of a vehicle. It was further alleged in the information that in the commission and attempted commission of the offenses, a principal was armed with a firearm within the meaning of Penal Code section 12022, subdivision (a), and that appellant personally used a firearm within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1). On a 1118.1 Penal Code motion the court dismissed the 12022.5 and 1203.06, subdivision (a) allegations. The jury found the 12022, subdivision (a) allegation to be true. Appellant was sentenced to state prison.

Appellant's motions to set aside the information pursuant to Penal Code section 995 and to suppress evidence pursuant to Penal Code section 1538.5 were denied. Appellant's motion for a new trial was also denied.

Appellant sets forth nine grounds of appeal. We deal here at length with three.

### STATEMENT OF FACTS

At about 7:40 a.m. on February 8, 1982, Mark Melquist, assistant manager of Mrs. Gooch's Food Store in the Mar Vista area of Los Angeles, was in the office of the store doing invoices. The store was not open to the public until 9 o'clock in the morning but some employees started work at 7:30 a.m.

A black man entered the office, pointed a gun at Mr. Melquist and asked "Where's the money?" Mr. Melquist did not answer, but the man forced him in the direction of the office safe. The man ordered Melquist to open the safe, and he complied. Then the man forced Melquist down to the ground and tied him with some wire. Melquist heard coins and sacks being put into a box.

---

*Assigned by the Chairperson of the Judicial Council.

At one point during the incident, Melquist heard the black man who had confronted him direct an accomplice to unload the money from the safe. Another store employee saw two black men leaving the office area. One of the men was carrying a heavy box containing the store's cash box of money bags and rolled coins, and the other man ordered that employee into the office where Melquist lay.

Jeffrey Braswell was delivering bread to the store in a white Dodge van at this time. When Braswell emerged from the store, a black man approached him, pointed a gun at him and demanded the keys to the van. Braswell complied. Braswell saw a second black man carrying a cardboard box, and the two men lifted the box into the van. The men ordered Braswell to go into the office of the store, and drove off in the van.

At about 8 o'clock on the morning of the same day William Naughton was leaving home to go to work. He lived one block from Mrs. Gooch's Food Store. He noticed a white Cadillac similar to one in which the appellant was arrested parked in front of the house next door and saw a black man sitting in it. Mr. Naughton had lived in his house for 22 years and was not familiar with either the car or its occupant.

Naughton drove around the block, and as he returned to his house he saw two black males jump out of a van which had pulled up behind the Cadillac.

The men from the van took a carton from it, put that into the trunk of the Cadillac and entered it. The black man Naughton first saw was still sitting behind the wheel. The Cadillac then drove off. Mr. Naughton made a mental note of the license number and wrote it down when he returned into the house. He then called the police and relayed to them what he had seen.

The police staked out the Cadillac at 4019 Muirfield Road later that same day. Officer Bruce Bass saw appellant carry a bag to the car and drive off with a female passenger. The car was stopped and appellant was arrested. A bag similar to the one appellant had carried into the car was found on the right front floorboard and it contained $460.40 in coins.

A search of appellant's residence revealed a fully loaded gun similar to the one used in the robbery on a shelf in the closet. A shaving kit filled with $183 in quarters, one Susan B. Anthony dollar, and one nickel was found in the same closet. Also found in a shoe box in that closet were 300 one-dollar bills and 31 food stamps, exactly one-third of the food stamps stolen during the robbery.

When appellant was booked, two $100 bills, two $50 bills, four $1 bills, and 60 cents were found in appellant's pants pocket. Approximately $3,500

was taken during the robbery including a large amount of coins and a large number of single dollar bills.

A lineup was held after appellant's arrest and Mr. Braswell selected appellant at that lineup as bearing the same appearance as the robber, but he was not positive of his identification.

For defense, appellant called the following witnesses: Stonette Jackson who was the individual apprehended in the car at the time appellant was arrested, Gladys McGriff who is appellant's mother, and Phillip V. McGriff, the defendant.

Stonette Jackson testified that later in the morning of the robbery appellant came to her apartment, across the street from his residence, carrying a large suitcase. It contained women's clothing, jeans and a couple of pairs of pants, a sweater and some odds and ends such as rollers, a mirror, hairpins, lipstick and makeup, and he offered it to her. She accepted everything. Appellant requested that she accompany him to make a car payment. He stayed about thirty minutes in the apartment talking, then he left to go back to his apartment stating that he would shower and change his clothes for the trip to the place where he had to make the payment. She further testified that occasionally she received food stamps, and that on various occasions she loaned defendant food stamps instead of money when he requested money. When she did join appellant in his Cadillac for the trip to the place where he was to make the car payment, they were both overtaken and apprehended. Subsequently she pointed out to the police the place where appellant lived with his mother.

Mrs. Gladys McGriff testified that she believed her son was home the entire morning. She further testified that she was in the habit of collecting coins and that she frequently wrapped them in coin wrappers. She stated that her son, Dee, occasionally left guns in her apartment and that she did not use a gun, would not know how to use one, and was apprehensive about doing so.

To her knowledge her son, the defendant, was not employed at this time, but was trying to get into Trade Tech School for photography. He had not completed his registration, but was intending to do so.

Appellant testified he had never seen Mrs. Gooch's Food Store before his arrest and had had nothing to do with the robbery. A friend by the name of Ricky borrowed his car on the morning of the robbery, after calling him on the phone and awakening him at about 6 a.m. Ricky owed him "$200, $300, something like that . . . . Part of it was from different wagers that we had

on—you know—sporting events and stuff like that." Ricky later returned the car, appellant testified, along with the coins that were later found in the car. The coins were in the car because at the time of his arrest appellant was on his way to make a car payment, using the coins. The money and food stamps found in his residence belonged to appellant or his mother, and the gun, of which appellant was unaware, belonged to appellant's brother.

At the time of his arrest appellant had over $300 in currency in his wallet. He testified that he was nevertheless planning to make the car payment in coins as a sort of "joke."

Appellant testified that Ricky said he had brought a total of $250 in change. Appellant added additional coins from his mother's coin jars. He testified that he had not told his mother that he had taken these coins because "It wasn't necessary." He explained carrying $460 in coins when his car payment was only about $231 by stating that he intended to make two car payments, one a month in advance.

He went to Stonette's apartment, leaving the bag in the car, then returned to his own apartment, taking the bag from the car. At that time he put his mother's coins in the bag. He had not looked inside the bag before this to see if there was change inside the bag, and had not counted the coins. Then he packed a suitcase to bring to Stonette and returned to her residence. That was later than 11:30 and could have been around 12 noon.

### THE ADMISSION OF EVIDENCE OF A PRIOR CONVICTION OF A FELONY

Appellant had been convicted of the felony of assault with a deadly weapon in 1969. Counsel for appellant (who was appellant's trial counsel as well) filed a written motion *in limine* for a ruling under the authority of *People v. Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826]. He sought an order of the court directing that evidence of the defendant/appellant's prior conviction of assault with a deadly weapon not be given to the jury. The prior conviction of a felony was an element of count 3 of the information. (Pen. Code, § 12021.) Defendant/appellant offered to stipulate to the fact of the prior conviction. This offer was refused by the prosecution. The motion was made on June 28, 1982, Proposition 8 was passed on June 8, 1982.

The *Hall* decision, in pertinent part, holds as follows: "[I]n a prosecution for violating section 12021 the element of a prior conviction of a felony may not be given to a jury if the accused stipulates to it." (*People* v. *Hall, supra,* 28 Cal.3d 143, 156.)

Article I, section 28, subdivision (f) of the California Constitution abrogates that rule. It provides as follows: "When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."

■ The trial court denied defendant/appellant's motion and chose to follow the mandate of Proposition 8.

This was error. *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149], held that Proposition 8 applies only to prosecution for crimes committed on or after its effective date. The crimes alleged in this case occurred on February 8, 1982.

However, our inquiry does not end here. We have yet to consider whether there is a reasonable probability that the jury would have reached a different result if the error in admitting the evidence of the prior conviction had not occurred. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Although evidence against appellant was largely circumstantial, the circumstantial evidence was overwhelming.

Approximately $3,500 was taken during the robbery including a large amount of coins and single dollar bills and exactly 93 food stamps. At approximately 8 a.m. on the date of the robbery William Norton who lived one block from Mrs. Gooch's Food Store noticed a white Cadillac similar to one in which the appellant was arrested parked in front of his house. He noted the license number and transmitted it to the police. While the black man Mr. Naughton first saw was still sitting behind the wheel two men from a van (Braswell's stolen van) took a carton from the van, put it into the trunk of the Cadillac and entered the Cadillac. Later that same day the police staked out the Cadillac at 4019 Muirfield Road, appellant's residence. Appellant was observed carrying a bag to the car and driving away with a female passenger. When the car was stopped and appellant arrested, a bag similar to the one appellant had carried into the car was observed on the right front floorboard, and it contained $460.40 in coins. A search of appellant's residence revealed a fully loaded gun similar to the one used in the robbery on a shelf in the closet; a shaving kit filled with $183 in quarters, one Susan B. Anthony dollar and one nickel was found in the same closet. Also in a shoe box in that closet were 300 one-dollar bills and 31 food stamps, exactly one-third of the food stamps stolen during the robbery. When appellant was booked, 2 one-hundred dollar bills, 2 fifty-dollar bills, 4 one-dollar bills and 60 cents were found in appellant's pants pocket. Ap-

pellant's attempt to explain these circumstances from the witness stand was incredible.

Although appellant's counsel, who was also his counsel at the trial, did not completely waive final argument, his remarks were perfunctory and general and lacking in any persuasive effect. Although appellant's counsel admits in his brief that this decision virtually waiving final argument was made by him and his client for strategic and tactical reasons, the remarks made no argument against the contentions of the prosecution.

It should also be noted that the prior felony of which the defendant had been convicted was assault, not armed robbery.

Based on the foregoing record there is no reasonable probability that the jury would have reached a different result if the error had not occurred.

## 1538.5 MOTION

██ Appellant contends that the trial court erroneously denied his motion to suppress the evidence recovered in the search of defendant's apartment.

Between five and six hours after the robbery, officers made a warrantless entry of defendant's apartment. The contention is made that this warrantless entry tainted the later search under the search warrant which was obtained. We disagree.

## FACTS

The robbery occurred at approximately 7:40 a.m. The investigating officer, Peter Waack, went to the scene of the robbery. He learned of the license number obtained from a witness and ran a check through DMV for further information. Obtaining the address of the owner, the defendant, he directed some other officers to stake out the location of defendant's residence. The stakeout commenced at approximately 10:30 a.m., a few moments after the obtaining of the address of appellant. Two hours after the stakeout had commenced officers saw a black male (who turned out to be the defendant) and a female approach the car. The male who became the driver was carrying a small leather bag similar to the one containing the large quantity of coins found in the car after appellant's arrest. The car was stopped by an officer upon receiving the information that the car was moving. The brown leather bag was on the front passenger floorboard of the car. It was open, and from his vantage point outside the car the officer could see coins inside the bag. The occupants were arrested. After appellant's arrest the officers, who were aware that other suspects were still at large,

formed the opinion that these suspects might be in appellant's apartment. They approached it, and one of the officers knocked and announced his presence and purpose. He heard sounds of movement coming from within the apartment as of a human being moving around. The officer knew that weapons had been used in committing the crime, and believing that one or more of the suspects who were still at large were attempting to flee or arm themselves, for reasons of his personal safety and that of other officers, discontinued knocking, broke down the door of the apartment, and entered. Only a cursory search for suspects was made. None were discovered. The officers waited inside the residence for one to one and a half hours until a search warrant was delivered to the residence. The decision to obtain the search warrant had been made prior to appellant's arrest and the affiant had no prior knowledge of the break-in.

## DISCUSSION

A warrantless entry may be justified if there are exigent circumstances. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 275-276 [127 Cal.Rptr. 629, 545 P.2d 1333].) Exigent circumstances include the necessity for swift action in order to forestall an imminent escape of a suspect. (*People* v. *Ramey, supra,* at p. 276.) Appellant was the only male arrested when the officers stopped his car. The officers were aware that the robbers had been armed at the time they committed the crime. The conclusion of the officers that the remaining robbery suspects might be in appellant's residence was a reasonable one. It was reinforced by the recovery of a large amount of coins from appellant's car. The officers felt that appellant may have been going to the bank to convert the coins to currency and thereafter to return to his apartment. (See *People* v. *Coffee* (1980) 107 Cal.App.3d 28, 34 [165 Cal.Rptr. 676]; also *In re Jessie L.* (1982) 131 Cal.App.3d 202, 213 [182 Cal.Rptr. 396]; *People* v. *Rogers* (1978) 21 Cal.3d 542, 547-548 [146 Cal.Rptr. 732, 579 P.2d 1048].)

## JURY INSTRUCTIONS

■ Appellant contends that it was error for the trial court to refuse his instruction that an aider and abettor must share the criminal intent of the principals. *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318] was pending at the time of the trial herein. Subsequently, *Beeman* required that the jury be instructed that where the elements of the crime encompassed the specific intent to do some act beyond the actus reus of the crime, that the aider and abettor "share" the specific intent of the perpetrator. The court explains that by the word "share" is meant when the aider and abettor "knows the full extent of the perpetrator's criminal purpose and

gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." (*Id.*, at p. 560.)

*Beeman* is silent on the point of its retroactivity. Prior to the opinion the law was unsettled as to the intent an aider and abettor must harbor. (*Id.*, at p. 556.) However, even assuming that the *Beeman* ruling could be retro-actively applied, no reversal is required because any error in refusing appellant's request for the instruction was harmless.

Appellant's defense did not focus on the question of his intent or on the nature of his acts. The prosecution produced overwhelming evidence showing that appellant in fact not only aided but participated in the robbery. "Intent is what must be *proved*; from a person's action with knowledge of the purpose of the perpetrator of a crime, his intent to aid the perpetrator can be *inferred*. In the absence of evidence to the contrary, the intent may be regarded as established." (*Id.*, at pp. 557-558, italics in original.)

Appellant's remaining contentions are without merit.

Judgment affirmed.

Spencer, P. J., and Dalsimer, J., concurred.