725 P.2d 493

STATE of Arizona, Appellee,

v.

Kent Alan LEONARD, Appellant.

No. 1 CA–CR 8658.

Court of Appeals of Arizona,
Division 1, Department C.

March 13, 1986.

Reconsideration Denied June 4, 1986.

Review Denied Sept. 16, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Div., Crane McClennen, Asst. Atty. Gen., Phoenix, for appellee.

Perry, Hammond, Drutz & Musgrove by Marc E. Hammond, Prescott, for appellant.

GERBER, Judge.*

Kent Alan Leonard appeals from his conviction and sentence for the crime of driving while under the influence of intoxicating liquor (DWI) with two prior similar convictions within a period of sixty months. He raises six issues on appeal, each of which require a detailed statement of facts.

* The Honorable RUDOLPH J. GERBER was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.

*Facts*

On March 18, 1984, at approximately 1:00 a.m., Officer Robert McCarthy of the Department of Public Safety observed the defendant driving away from Shawn's Bar in Sedona, Arizona. The defendant's vehicle made erratic movements and its headlights flickered on and off. As the vehicle approached the officer, the headlights were off, but when the vehicle turned onto the highway, the headlights were illuminated. Officer McCarthy observed the vehicle weaving and traveling 10 to 20 miles per hour in a 40–mile–per–hour zone. The defendant executed a left turn by traveling for a short distance in the lane for oncoming traffic. At that point, Officer McCarthy turned on his emergency lights and stopped the vehicle.

Officer McCarthy noticed that the defendant was unsteady on his feet and smelled of alcohol. The defendant's face was flushed, his eyes bloodshot and watery, and his speech slurred. He failed to pass four field sobriety tests. Upon his arrest at 1:14 a.m., he was put into the back of a patrol car. He kicked the insides of the vehicle to the extent that mace and leg irons were needed to subdue him.

Officer McCarthy drove the defendant to a police sub-station in Sedona, arriving at approximately 2:00 a.m. Shortly thereafter, the defendant was read his *Miranda* rights. McCarthy administered two breath (intoxilyzer) tests between 2:29 and 2:33 a.m. The test results were .26 and .24 percent, respectively. The defendant admitted that he had drunk about six beers between 1:15 p.m. and 12:45 a.m. McCarthy advised the defendant that he could request a breath sample for his independent testing and an independent blood test. McCarthy secured a breath sample in a glass tube which was placed with the defendant's property. The defendant testified that he received this sample but that he later lost it.

The defendant expressed a desire to contact a physician to obtain an independent blood test. He wanted to contact a Dr. Caskey but could not find the doctor's telephone listing. He did call the number of a Dr. Hildebrand whose answering service indicated that the doctor was unavailable. He then asked if he could call a Dr. Kahle in Flagstaff and Sam Ornsby, a long-time friend and retired Department of Public Safety officer. McCarthy testified that he permitted Leonard to continue his efforts to contact a physician up until the time that he was transported to Flagstaff for booking on an outstanding trespass warrant discovered after the DWI arrest. Although the defendant testified otherwise, the trial judge accepted McCarthy's testimony on this point. At trial, McCarthy explained his reasons as follows:

> I said, well, the doctors he wanted were in Flagstaff, we are going to Flagstaff, so he could call from there.... I finally cut it off at the end. I thought I was quite patient with him.... [T]he deputy ... said the doctor he wanted was in Flagstaff Hospital, so as long as we're going to Flagstaff it seemed reasonable he could contact him up there.... Then he wanted to call this Sam Ornsby the retired patrolman, and I think at this point I said, look you can make your call from Flagstaff. We made a reasonable attempt here.

McCarthy and the defendant left Sedona at 3:30 a.m.

During the approximately one-hour drive to Flagstaff, McCarthy learned from the defendant that Ornsby was living in Phoenix rather than Flagstaff. After arriving in Flagstaff, the defendant made no attempt to make any further phone calls to arrange for a blood test. He posted bond and was released between 5:00 and 5:30 a.m.

The jury returned a verdict of guilty of driving while intoxicated with two prior similar convictions within a period of sixty months. The defendant was sentenced to the presumptive term of two years imprisonment. He now raises these six issues on appeal:

(1) whether the trial court erred in applying the April, 1984, amended version

of A.R.S. § 28–692.03(B) retroactively;

(2) whether A.R.S. § 28–692.03(B) as amended constitutes an unconstitutional violation of the doctrine of separation of powers;

(3) whether the trial court erred by denying the defendant's motion for new trial on the grounds of jury misconduct;

(4) whether the trial court erred by admitting evidence of a horizontal nystagmus test administered to the defendant;

(5) whether the state unreasonably interfered with the defendant's attempt to obtain an independent blood test, thereby denying him due process and a fair trial;

(6) whether the trial court erred by refusing to accept the defendant's offer to stipulate to two prior DWI convictions.

### Retroactive Application of A.R.S. § 28–692.03(B)

The defendant's first contention is that the trial court erred in ruling that the April, 1984, version of A.R.S. § 28–692.-03(B) should apply to the admissibility of his breath test. A 1984 amendment to that statute reduced the foundational requirements necessary to admit the results of a breath test. Prior to that amendment, A.R.S. § 28–692.03, as interpreted by our Supreme Court in *Fuenning v. Superior Court*, 139 Ariz. 590, 680 P.2d 121 (1983), required the state to satisfy procedures and guidelines promulgated by the Department of Health Services. The defendant contends that the state should have had to meet these more burdensome foundational requirements before the results of his breath test were admitted.

The current version of A.R.S. § 28–692.03 became effective April 24, 1984, after the defendant's arrest, but before his trial. The defendant contends it was enacted too late to apply to his crime. Statutory changes in procedure may be ap-

plied to pending proceedings unless such a statute impairs vested rights. *Allen v. Fisher*, 118 Ariz. 95, 96, 574 P.2d 1314, 1315 (App.1977). There is no vested right to a particular mode of procedure. A procedural law prescribes the method of enforcing rights as opposed to creating, defining, or regulating such rights. *Id.* Statutes relating only to procedure rather than substantive law may apply retroactively. *Id.*

The defendant argues that his situation parallels that in *State v. Coconino County Superior Court*, 139 Ariz. 422, 678 P.2d 1386 (1984). There our Supreme Court held that the amended version of A.R.S. § 13–502(B) shifting the burden of proof of sanity to the accused would not be applied retroactively. However, the amended version of A.R.S. § 28–692.03 is distinguishable. Unlike A.R.S. § 13–502(B), A.R.S. § 28–692.03 is a procedural rule governing the foundation for admission of evidence, not the amount of evidence required for conviction.

The United States Constitution neither prohibits nor requires retroactive application of a constitutional rule of criminal procedure. *State v. Espinosa-Gamez*, 139 Ariz. 415, 418, 678 P.2d 1379 (1984). In *State v. Steelman*, 120 Ariz. 301, 585 P.2d 1213 (1978), the court held that constitutional prohibitions against *ex post facto* laws do not apply to changes in rules of evidence, whether statutory or court-made. *Steelman* found no *ex post facto* violation where "the crimes for which the defendant was charged, the punishment to be imposed, and the quantity or degree of proof necessary to convict remained the same; only the admissibility of certain evidence was changed." *Id.* at 318, 585 P.2d at 1230. In this context, and in light of *Steelman*, the amended version of A.R.S. § 28–692.03 constitutes a procedural rule merely governing the admissibility of evidence. The trial court thus did not err in applying the 1984 version of A.R.S. § 28–692.03 retroactively.

## Separation of Powers Doctrine

■ The defendant's next argument is that A.R.S. § 28–692.03(B) constitutes an unconstitutional violation of the doctrine of separation of powers because it eliminates foundational safeguards for admitting breath test results. This objection was not raised in the trial court. This argument is therefore waived on appeal, absent fundamental error. *State v. Thomas*, 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (1981).

■ We find no fundamental violation of the separation of powers doctrine in the legislature's promulgation of the amended version of A.R.S. § 28–692.03. In *State ex rel. Collins v. Seidel*, 142 Ariz. 587, 691 P.2d 678 (1984), in discussing admission of blood alcohol test results, our Supreme Court considered the legislature's promulgation of procedures for admission of evidence. Although Article 6, § 5(5) of the Arizona Constitution gives the Arizona Supreme Court the power to make court rules, courts also recognize the legislature's "statutory arrangements" which are "reasonable and workable." *Id.* at 591, 691 P.2d at 682.

The defendant claims that the amended version of A.R.S. § 28–692.03 eliminates the requirement that the party offering the blood alcohol test comply with statewide uniform Department of Health Services (DHS) procedures. The amended version of A.R.S. § 28–692.03 does require compliance with uniform statewide standards. The test must utilize a device approved by DHS. The operator must possess a valid permit from DHS and must follow a DHS-approved checklist. Maintenance records must still be presented. Here, the trial testimony showed that DHS had promulgated a uniform checklist and other uniform standards. The testimony also showed that this procedure complied with the statewide standards of DHS.

■ In *Fuenning*, our Supreme Court interpreted A.R.S. § 28–692.03 as it existed at that time. The amended version does not conflict with the rules of evidence nor does it threaten to engulf a general rule of admissibility. *See Seidel*, 142 Ariz. at 591, 691 P.2d at 682. We hold, therefore, that to the extent not waived by failure to object below, A.R.S. § 28–692.03 does not violate the doctrine of separation of powers.

## Jury Misconduct

The defendant also contends that the trial court erred in denying his motion for new trial based upon jury misconduct.

Two jurors signed affidavits stating that during deliberations, a third juror, William Jordan, a retired railroad employee, told the jury that he was a former alcoholic, that he had driven in excess of 100 miles in an alcoholic blackout, that he had been able to pass field sobriety tests with a blood alcohol level of .30 and that the defendant would lose his job with the Santa Fe Railroad if he were convicted of a felony.

■ A conviction will not be reversed unless an abuse of discretion affirmatively appears. *State v. Jeffers*, 135 Ariz. 404, 426, 661 P.2d 1105, 1127 (1983). Granting a new trial for jury misconduct is within the discretion of the trial court. *State v. Rodriguez*, 125 Ariz. 319, 321, 609 P.2d 589, 591 (App.1980). Under Rule 24.1(c), Arizona Rules of Criminal Procedure, the court may grant a new trial if jurors "receiv[e] evidence not properly admitted during the trial...."

■ In denying the motion for new trial, the trial court relied on the language of *State v. McLoughlin*, 133 Ariz. 458, 652 P.2d 531 (1982):

It must be remembered that the rule applies only when the jury received information from an outside source during the course of the trial or during deliberations. Jurors may rely on their common sense and experiences during deliberations.

*Id.* at 461 n. 2, 652 P.2d at 534 n. 2. A defendant cannot impeach the jury verdict by delving into the jury's mental processes or personal experiences. Rule 24.1(d); *State v. Callahan*, 119 Ariz. 217, 219, 580 P.2d 355, 357 (App.1978). Here there is no evidence that the jurors received informa-

tion from an outside source. In particular, there is no showing that juror Jordan received his information from any outside source after impanelment. Nor is there any showing that this information affected the verdict. More importantly, his conversation appears only to be a narration of his personal experience with DWI incidents. The trial court therefore did not abuse its discretion in denying the motion for new trial.

### Horizontal Nystagmus Test

The defendant's fourth argument is that the trial court erred in admitting Officer McCarthy's testimony that the defendant failed a horizontal gaze nystagmus test.

■ On appeal, the defendant objects to the horizontal nystagmus test on the basis of lack of general acceptance in the scientific community under *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). This objection was not raised in the trial court. For that reason, the objection is waived absent fundamental error. *State v. Dickey*, 125 Ariz. 163, 169, 608 P.2d 302, 308 (1980). Considering the evidence, the blood alcohol readings, the results of the other field sobriety tests, the erratic driving, and the defendant's general appearance and behavior, any error in admitting the test results was harmless and thus does not reach the fundamental error standard.

### Independent Blood Test

Before trial, the defendant filed a motion to dismiss the charges on the grounds that he was denied an independent blood test when the arresting officer refused him the additional telephone call to a doctor or to his personal friend. The trial court denied the motion. The defendant now asserts that this denial was error.

■ A.R.S. § 28–692(F) (now A.R.S. § 28–692(I)) and constitutional standards of due process give a DWI suspect the right to obtain an independent blood test. *McNutt v. Superior Court*, 133 Ariz. 7, 9, 648 P.2d 122, 124 (1982). However, police officers are not required to take the initiative or even to assist in procuring such

evidence. *Smith v. Cada*, 114 Ariz. 510, 512, 562 P.2d 390, 392 (App.1977) (quoting *In re Martin*, 58 Cal.2d 509, 24 Cal.Rptr. 833, 374 P.2d 801 (1962)). However, the state may not unreasonably interfere with an accused's attempts to obtain a blood test near the crucial time of arrest. *Id.* 114 Ariz. at 514, 562 P.2d at 394. If the state does unreasonably interfere, dismissal with prejudice is the appropriate remedy. *McNutt*, 133 Ariz. at 10, 648 P.2d at 125; *Amos v. Bowen*, 143 Ariz. 324, 328, 693 P.2d 979, 983 (App.1984). The legal question here thus becomes whether the police refusal to allow further phone calls constitutes an "unreasonable interference."

Some examination of prior case law is helpful to define the phrase "unreasonably interferes." In *Smith v. Cada, supra,* police indifference to the defendant's repeated requests to telephone his attorney and to set bail was deemed an unreasonable interference. In *McNutt, supra,* an unreasonable interference occurred when the police ignored defendant's requests to telephone his attorney and to obtain an independent blood test and released him 2 to 2½ hours after arrest. In the companion case of *Smith v. Ganske*, 114 Ariz. 515, 516–17, 562 P.2d 395, 396–97 (App.1977), police refusal to release a defendant after tender of the requisite bail amount also constituted an unreasonable interference.

The facts of this case do not approximate such an unreasonable interference. The following factors are instructive:

(1) Sedona, the place of arrest, was without a hospital;

(2) the defendant was allowed to call a Sedona doctor;

(3) in Sedona, McCarthy did provide the defendant with an independent breath sample which was placed with his property and later lost while in the defendant's possession;

(4) the defendant's telephoning a Flagstaff doctor would ultimately require bringing the Flagstaff doctor to Sedona or traveling with the defendant to Flagstaff;

(5) the defendant also wanted to call a friend whom Officer McCarthy mistakenly thought resided in Flagstaff, and the defendant did not correct McCarthy's mistake regarding the friend's residence until they were already in transit to Flagstaff;

(6) Flagstaff is an approximately one-hour drive from Sedona;

(7) the time between the defendant's second breath test and his arrival in Flagstaff was approximately two hours; and

(8) the defendant was allowed to try and make telephone calls up until the officer was ready to leave for Flagstaff.

The defendant relies heavily on the recent case of *Amos v. Bowen, supra,* to support his argument that this delay was an unreasonable interference. There, Amos requested an independent blood test. While taking him to the hospital for the test, the police officer delayed two hours in answering another call. At that point, Amos decided he no longer wanted the independent blood sample. The court held that this two-hour delay was an unreasonable interference.

▮▮▮ *Amos* is distinguishable from the present case. Although two hours passed between the time of Leonard's second breath test and his arrival in Flagstaff, one hour of that time was unavoidable travel time. Even if this defendant's phone call had reached the Flagstaff doctor, one hour of travel time would still have been required to bring the doctor to Sedona or to take the defendant to Flagstaff. Given the tender of a breath sample to the defendant, the repeated permission to contact a physician until just prior to leaving for Flagstaff, the geographical distance between Sedona and Flagstaff and the hour of the night, we believe that the officer, under these circumstances, did not unreasonably interfere with the defendant's right to seek an independent blood sample.

### Prior DWI Convictions

The defendant's final argument is that the trial court erred in refusing to accept his offer to stipulate to two prior DWI convictions occurring within sixty months of the present offense. Leonard filed a pre-trial motion *in limine* to suppress these prior convictions and offered to stipulate to them outside the presence of the jury so that, if the jury returned a guilty verdict, the conviction would be deemed a violation of felony DWI with two priors committed within sixty months. The defendant also made an alternative offer to permit the jury, after a guilty verdict on simple DWI, to sign an additional verdict form also finding him guilty of felony DWI with two priors. The state was unwilling to enter into either stipulation. While agreeing that evidence of the priors would be prejudicial to the defendant, the trial court did not require the state to accept either stipulation because of the belief that the state was obligated to prove all elements of the charge before the jury. Obviously, the danger of prejudice arises from the risk that, upon learning of the defendant's two prior convictions, the jury would conclude summarily that "if he's done it twice before, he must have done it again" without properly weighing the evidence at hand.

Both the trial court below and the state in its answering brief cite *State v. Geschwind,* 136 Ariz. 360, 666 P.2d 460 (1983), in support of the position that the defense may not force any stipulation on the state. *Geschwind,* however, is distinguishable from this case because in *Geschwind* the defendant made no offer to stipulate. Here, the defendant was willing to stipulate to his two prior convictions so that a guilty verdict would automatically convert to felony DWI with two priors.

The legal issue is thus whether the state must accept a defendant's offer to stipulate to an element of the charged offense. No Arizona case law is directly on point. Other state courts and federal courts have confronted this issue but disagree on its resolution.

Several California cases address whether the state must accept the defendant's offer

to stipulate to an element of a charged offense. In *People v. Hall*, 28 Cal.3d 143, 167 Cal.Rptr. 844, 616 P.2d 826 (1980), the Supreme Court of California ruled that a defendant's offer to stipulate elements of a crime must be accepted by the prosecutor unless the state can "clearly demonstrate" that the facts to which the defendant offers to stipulate have some probative value. *Hall* has been followed by many California courts: *People v. McGriff,* 158 Cal.App.3d 1151, 205 Cal.Rptr. 232 (1984); *People v. Hickman,* 127 Cal.App.3d 365, 179 Cal. Rptr. 541 (1981); *People v. Faught,* 124 Cal.App.3d 848, 177 Cal.Rptr. 637 (1981); *People v. Green,* 117 Cal.App.3d 199, 172 Cal.Rptr. 582 (1981). This approach has been abrogated by constitutional amendment in California. Cal. Const. art. I, § 28(f); *see People v. Callegri,* 154 Cal. App.3d 856, 202 Cal.Rptr. 109 (1984).

Federal jurisdictions also differ. In *United States v. O'Shea,* 724 F.2d 1514, 1516 (11th Cir.1984), the 11th Circuit adopted a flexible approach, not unlike that used by the California court in *Hall:*

> As a general rule, a party may not preclude his adversary's offer of proof by admission or stipulation. This proposition, however, is qualified by Rule 403 of the Federal Rules of Evidence, which requires that evidence be excluded if its potential for unfair prejudice is substantially outweighed by its probative value. The ultimate decision to exclude evidence under Rule 403 is "committed to the sound discretion of the trial court, tempered by the particular facts presented." ... An offer to stipulate is one factor that the trial court should consider in making a determination under Rule 403.
> ....
> Unlike other courts, our circuit has declined to adopt a per se rule either for or against admission of evidence where the defendant offers to stipulate to an element of the offense. [*U.S. v.*] *Grassi,* 602 F.2d [1192] at 1197. *Compare United States v. Poore,* 594 F.2d 39 (4th Cir.1979) (error not to strike nature of crime from indictment where stipulation offered) *with United States v. Williams,*

612 F.2d 735 (3d Cir.1979), *cert. denied,* 445 U.S. 934, 100 S.Ct. 1328, 63 L.Ed.2d 770 (1980) (government not required to accept stipulation).

*O'Shea,* 724 F.2d at 1516. *See also, United States v. Spletzer,* 535 F.2d 950, 955–56 (5th Cir.1976).

Faced with this choice of precedents, we hold that the state is not required to accept a stipulation when the prejudicial potential of the evidence is substantially outweighed by the state's legitimate need to prove the facts to which the defendant offers to stipulate. A trial court should undertake a balancing test under Evidence Rule 403 when an offer to stipulate is made. The balance should include these two questions, among others: (1) Does the defendant's proffered stipulation fall short of satisfying some specific, necessary element within the state's burden of proof? (2) Is the state's refusal to accept the proffered stipulation likely to encumber the trial with evidence on uncontested matters? An affirmative answer to the first question should lead to a rejection of the stipulation; an affirmative answer to the second suggests that the court should require the stipulation to be accepted.

In the instant case, the defendant's proffered stipulation eliminated any chance that knowledge of prior convictions would prejudice the jury. The only legitimate reason for introducing the defendant's two priors before the jury was to satisfy the felony DWI statute. The details of these two convictions were of no consequence. The defendant's stipulation regarding his priors satisfied the felony DWI statute. The state's only motive in putting the priors before the jury was to prejudice the defendant on the pending charge by encouraging the jury to hastily conclude that "if he's done it before, he's guilty now."

Although the trial court committed error in rejecting the proffered stipulation, it was harmless in light of the other overwhelming evidence against the defendant. Officer McCarthy's testimony and the defendant's two intoxilyzer tests were sufficient for conviction. The jury would have reached the same result even if the error

regarding the stipulation had not occurred. Therefore, the error was harmless beyond a reasonable doubt. A.R.S. § 13–3987. *See State v. Corrales*, 138 Ariz. 583, 595, 676 P.2d 615, 627 (1983), and particularly *People v. McGriff*, 158 Cal.App.3d at 1157–58, 205 Cal.Rptr. at 236, where the trial court's denial of a defendant's offer to stipulate to a prior conviction did not require reversal because there was no reasonable probability that the jury would have reached a different result.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

KLEINSCHMIDT, P.J., and EUBANK, J., concur.