992 P.2d 612

**The STATE of Arizona,
Appellee/Respondent,**

v.

**Robert Lee SAIERS, Appellant/Petitioner.**

**Nos. 2 CA–CR 98–0004, 2
CA–CR 98–0362–PR.**

Court of Appeals of Arizona,
Division 2, Department A.

May 25, 1999.

Redesignated as Opinion and
Publication Ordered Sept. 9, 1999.

Review Denied Jan. 6, 2000.

Janet Napolitano, Arizona Attorney General By Paul J. McMurdie and Linda L. Knowles, Toni Marie Valadez, Phoenix, Attorneys for Appellee/Respondent.

Mark A. Suagee, Cochise County Public Defender By Yvonne Ayers, Bisbee, Attorneys for Appellant/Petitioner.

## OPINION

DRUKE, Chief Judge.

¶ 1  A jury rejected the insanity defense of appellant Robert Saiers and found him guilty of kidnapping, aggravated assault, armed robbery, and theft. The trial court sentenced him to a total of fifty-nine years in prison, and this appeal followed, as well as a petition for post-conviction relief filed pursuant to Rule 32, Ariz. R.Crim. P., 17 A.R.S. The trial court summarily denied the Rule 32 petition, and Saiers's petition for review has been consolidated with the appeal. Neither raises an argument meriting reversal.

## THE APPEAL

*Insanity Instruction*

¶ 2  Saiers contends the trial court committed reversible error when it refused his requested instruction explaining the consequences of a guilty except insane verdict under A.R.S. § 13–502, which replaced the former version of the statute that permitted a verdict of not guilty by reason of insanity.[1] We review a trial court's refusal to give an instruction for an abuse of discretion. *State v. Bolton*, 182 Ariz. 290, 896 P.2d 830 (1995). We review de novo whether the instruction the court gave properly stated the law. *State v. Orendain*, 188 Ariz. 54, 932 P.2d 1325 (1997).

¶ 3  The current version of § 13–502(D) provides, in pertinent part: "If the finder of fact finds the defendant guilty except insane, the court shall determine the sentence the defendant could have received ... if the defendant had not been found insane, and ... commit the defendant [to a secure state mental health facility] pursuant to [A.R.S.] § 13–

3994 for that term." Section 13–3994(D) requires the court to place the defendant "under the jurisdiction of the psychiatric security review board," which has jurisdiction over the defendant for a period of time "equal to the sentence the [defendant] could have received." Section 13–1994(F) adds that the defendant "is not entitled to a hearing before the board earlier than one hundred twenty days after the [defendant's] initial commitment" and that, even if the defendant is released after the hearing, whether absolutely or conditionally, the defendant remains "under the jurisdiction of the board."

¶ 4  Saiers argues that jurors ignorant of these statutory procedures may "still think that if they find the defendant insane, he'll be set free to endanger the public again," thus depriving the defendant of due process because such jurors might reject an otherwise well-grounded guilty except insane verdict. This would be avoided, Saiers claims, by an instruction explaining the consequences of a guilty except insane verdict. Saiers acknowledges that our supreme court has held that the former version of § 13–502 did not require a trial court to instruct a jury on the results of a not guilty by reason of insanity verdict, but asserts that we should reconsider the issue in light of the current statutes, "studies, principles of fundamental fairness, and the requirements of due process." We are unpersuaded that we should depart from prior case law for several reasons.

¶ 5  First, our supreme court has consistently held that any instruction on the consequences of an insanity verdict is improper. The court affirmed the trial court's refusal to give two such instructions in *State v. Peats*, 106 Ariz. 254, 256, 475 P.2d 238, 240 (1970), stating:

We think the two proposed instructions tended to inform the jury concerning matters which were not properly their concern. It is the jury's duty to find the facts. In finding the facts, the jury should be guided by the evidence in the case and

1.  Former § 13–502 was repealed by 1993 Ariz. Sess. Laws, ch. 256, § 2, effective January 2, 1994.

should not consider extraneous matters which might tend to influence their verdict independent of the facts surrounding the commission of the offense.

In *State v. Jensen*, 111 Ariz. 408, 410, 531 P.2d 531, 533 (1975), the supreme court adhered to its earlier statement in *Peats*, observing: "The jury ha[s] an obligation of finding the defendant guilty, not guilty or not guilty by reason of insanity. . . . What happen[s] after their verdict [is] not their concern." See also *State v. McLoughlin*, 133 Ariz. 458, 652 P.2d 531 (1982); *State v. Doss*, 116 Ariz. 156, 568 P.2d 1054 (1977).[2] As an intermediate appellate court, we are not at liberty to overrule these decisions of our highest court. *McKay v. Industrial Comm'n*, 103 Ariz. 191, 438 P.2d 757 (1968). " 'Whether prior decisions of the Arizona Supreme Court are to be disaffirmed is a question for that court.' " *Myers v. Reeb*, 190 Ariz. 341, 342, 947 P.2d 915, 916 (App.1997), quoting *City of Phoenix v. Leroy's Liquors, Inc.*, 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993).

¶ 6  Second, in *Jensen*, the supreme court expressly rejected the primary authority upon which Saiers relies, *Lyles v. United States*, 254 F.2d 725 (D.C.Cir.1957), overruled on other grounds, *United States v. Brawner*, 471 F.2d 969 (D.C.Cir.1972). In *Robison v. State*, 888 S.W.2d 473, 477 (Tex. Crim.App.1994), the court stated that *Lyles* requires an explanatory instruction when a defendant raises an insanity defense because "such an instruction prevents confusion by jurors and prevents jurors from finding an individual guilty where the clear weight of the evidence indicates the defendant was insane at the time of the commission of the

offense." [3]  In rejecting the reasoning of *Lyles*, our supreme court observed:

[T]he jury's common understanding of the other two verdicts (guilty and not guilty) is not always that accurate. Indeed, a jury can never know whether a sentencing judge will give the maximum sentence possible or a lesser one, or whether he will suspend imposition of sentence and grant probation. Even if the defendant is found not guilty, this does not preclude a civil commitment if warranted by the facts.

*Jensen*, 111 Ariz. at 410, 531 P.2d at 533.[4]

¶ 7  Next, the record in this case does not support Saiers's assertion that "[m]ost jurors still think that if they find the defendant insane, he'll be set free to endanger the public again." Although the opening brief refers to studies suggesting that jurors have preconceived ideas about the results or consequences of an insanity verdict, those studies were not submitted to the trial court and will therefore not be considered on appeal. See *State v. Schackart*, 190 Ariz. 238, 947 P.2d 315 (1997) (appellate court generally does not consider materials outside record); *GM Development Corp. v. Community American Mortg. Corp.*, 165 Ariz. 1, 795 P.2d 827 (App.1990) (review limited to record before trial court).

¶ 8  Moreover, even if we assume that jurors previously believed that an insanity verdict resulted in the defendant's release, the prospective jurors in this case were twice told during voir dire that the law had been changed. In response to a prospective juror's recollection that a defendant who had been found insane after killing his girlfriend or wife was "free as a bird" within "a year or so," the court stated that "the law has

---

**2.**  As the state notes, several other jurisdictions have held similarly: *Ex parte Trawick*, 698 So.2d 162 (Ala.1997); *Aizupitis v. State*, 699 A.2d 1092 (Del.Supr.1997); *People v. Anderson*, 266 Ill. App.3d 947, 204 Ill.Dec. 367, 641 N.E.2d 591 (1994); *State v. Fetters*, 562 N.W.2d 770 (Iowa App.1997); *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989); *Taylor v. State*, 881 P.2d 755 (Okla.Cr.App.1994).

**3.**  Saiers points out that other jurisdictions have followed *Lyles*: *Schade v. State*, 512 P.2d 907 (Alaska 1973); *People v. Moore*, 166 Cal.App.3d 540, 211 Cal.Rptr. 856 (1985); *People v. Thomson*, 197 Colo. 232, 591 P.2d 1031 (1979); *State*

*v. Babin*, 319 So.2d 367 (La.1975); *People v. Cole*, 382 Mich. 695, 172 N.W.2d 354 (1969); *State v. Hammonds*, 290 N.C. 1, 224 S.E.2d 595 (1976); *State v. Krol*, 68 N.J. 236, 344 A.2d 289 (1975); *Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977); *State v. Shickles*, 760 P.2d 291 (Utah 1988).

**4.**  In *Shannon v. United States*, 512 U.S. 573, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994), the Supreme Court held that a *Lyles*-type instruction was not required as a matter of general federal criminal practice.

changed since that incident." This was promptly reinforced by defense counsel's statement that, "as the court mentioned, the law has changed significantly since then."

¶ 9 Finally, even if the jurors were still concerned after voir dire about finding Saiers guilty except insane, they were instructed "not to consider the possible consequences" of their verdict, and we presume they followed that instruction. *State v. Ramirez*, 178 Ariz. 116, 871 P.2d 237 (1994); *State v. Brito*, 183 Ariz. 535, 905 P.2d 544 (App.1995).

*Motions for Mistrial* ·

¶ 10 Saiers contends the trial court erred in denying his two motions for mistrial. He made the first motion after the prosecutor's cross-examination of Saiers's expert, Dr. Morris. The prosecutor questioned Morris about Saiers's hospitalizations, whether they were voluntary, his responses to treatment, the circumstances under which he terminated treatment, and Morris's opinion that Saiers had become "institutionalized." In his motion, Saiers argued that he had been prejudiced by the prosecutor's questions because they implied to the jury that nothing would be gained by Saiers's hospitalization and prison was the only option. Saiers also claimed the prosecutor had violated an earlier trial court ruling that precluded any questioning about Saiers's possible future treatment. The prosecutor responded that his cross-examination was "in regard to [Saiers's] past record" and was intended to show that Saiers is "capable of manipulating the hospitals and putting them to the best use that he can" by "check[ing] himself into hospitals," accepting "some form of treatment," and "[w]hen it doesn't go the way he wants, ... leav[ing] the hospital against medical advice." The court denied the motion for mistrial, stating that it had "heard the testimony exactly as argued by [the prosecutor]" and finding "that no reasonable juror could have the perception of what [the defense] argued in the motion."

¶ 11 We review a trial court's denial of a motion for mistrial for a clear abuse of discretion. *State v. Koch*, 138 Ariz. 99, 673 P.2d 297 (1983); *State v. Walker*, 185 Ariz. 228, 914 P.2d 1320 (App.1995). "A declaration of a mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262, 665 P.2d 972, 984 (1983).

¶ 12 From our review of the record, we find no clear abuse of discretion in the trial court's denial of the first motion for mistrial. The court correctly found that the prosecutor's cross-examination of Dr. Morris had only delved into Saiers's past treatment and, thus, did not violate the court's earlier ruling precluding evidence of possible future treatment. Nor can we say the court erred in finding that the prosecutor's line of questioning did not suggest the jury should return a guilty verdict because treatment had not helped Saiers. The trial court was in the best position to determine the effect of the questioning, and we defer to its assessment absent a clear abuse of discretion. *State v. Ferguson*, 149 Ariz. 200, 717 P.2d 879 (1986). We find none here.

¶ 13 Saiers moved for a mistrial again after the prosecutor's closing argument to the jury. In addressing Saiers's insanity defense, the prosecutor argued that Saiers had had twenty-nine hospitalizations and

> understands how, to quote, and I think these are Dr. Morris' words, to cope with in [sic] institutions. He's, quote, institutionalized. He ... admits himself into the hospital then gets some treatment and goes out against medical advice.
>
> I submit to you, isn't ... this manipulation ... [?]

Saiers again argued that the prosecutor had brought up the matter of treatment, "insinuating that treatment does no good." In response, the prosecutor stated: "I never said treatment. [I said Saiers] shows up, ... he then admits himself and leaves. In this case he commits this offense and shows up at the hospital. I mean, he knows how to work these things. It doesn't have anything to do with treatment." The trial court agreed, stating that the prosecutor was "not arguing about now. He [was] pointing out the facts from the past.... I do not believe it goes any deeper than that." The court denied the

motion for mistrial. Based on our review of the record, it did not clearly abuse its discretion in doing so. Koch; Walker.

### PETITION FOR REVIEW

 ¶ 14 Saiers's petition for post-conviction relief alleged, pursuant to Rule 32.1(e), Ariz. R.Crim. P., that he had newly discovered evidence tending to impeach the victim. The evidence consisted of numerous charges the United States Army had brought against the victim, including charges of making false statements, fraudulent writings, and fraudulent expense reimbursement claims. The trial court summarily denied the petition, and Saiers petitioned for review of that denial. We review the denial of a Rule 32 petition for an abuse of discretion. *State v. Amaya–Ruiz*, 166 Ariz. 152, 800 P.2d 1260 (1990).

¶ 15 In denying the petition, the trial court found that Saiers had not presented a colorable claim because the evidence would not have undermined the victim's credibility or altered the verdict. Although we disagree with the trial court's reasoning, we nonetheless find that it reached the right result and also deny relief. See *State v. Oakley*, 180 Ariz. 34, 36, 881 P.2d 366, 368 (App.1994) (appellate court "will affirm the trial court when it reaches the correct result even though it does so for the wrong reasons").

■ ¶ 16 Before evidence may be considered newly discovered, it "must appear on its face to have existed at the time of trial but be discovered after trial." *State v. Apelt*, 176 Ariz. 349, 369, 861 P.2d 634, 654 (1993). The Army's charges against the victim did not qualify as newly discovered evidence because the Army did not file the charges until after Saiers's trial had concluded. Therefore, the evidence did not exist at the time of trial. Thus, even though it did so for the wrong reason, the trial court did not abuse its discretion in denying the petition for post-conviction relief.

¶ 17 Accordingly, Saiers's convictions and sentences are affirmed; we grant review of

the trial court's denial of his Rule 32 petition, but deny relief.

CONCURRING: M. JAN FLÓREZ, Judge, and PATRICIA G. ESCHER, Judge *.