NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOSEPH H. ANGER (Deceased), *Petitioner,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

O'REILLY AUTO PARTS, *Respondent Employer,*

SAFETY NATIONAL CASUALTY CORP/CORVEL ENTERPRISE,
*Respondent Carrier.*

No. 1 CA-IC 15-0037
FILED 6-23-2016

Special Action – Industrial Commission
ICA Claim No. 20141-750295
Carrier Claim No. OR-15-010715

Deborah A. Nye, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Joseph H. Anger (Deceased)
By Nancy Anger, Buckeye
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason Porter
*Counsel for Respondent*

Jardine Baker Hickman & Houston, PLLC, Phoenix
By Terrence Kurth
*Counsel for Respondent Employer, Respondent Carrier*

---

## MEMORANDUM DECISION

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kenton D. Jones joined.

---

**O R O Z C O**, Judge:

¶1        Petitioner Nancy Anger, as the widow of Joseph H. Anger (Joseph), seeks special action review of an Industrial Commission of Arizona (ICA) award and decision upon review denying Petitioner's claim for dependent death benefits.  For the following reasons, we affirm the decision of the Administrative Law Judge (ALJ).

### FACTS AND PROCEDURAL HISTORY

¶2        Petitioner and Joseph were married at the time of his death, which occurred while he was driving a company vehicle and delivering parts for O'Reilly Auto Parts.  A witness observed Joseph's vehicle veer off the road and come to a stop with Joseph slumped over the steering wheel.  First responders found Joseph to be in ventricular fibrillation, and transported him to a hospital where he was pronounced dead.  There is no evidence in the record that Joseph ever called for help using a cell phone or the truck's two-way radio.

¶3        Following Joseph's death, Petitioner filed a claim with the ICA for dependent's benefits, which stated briefly that her husband had no way to call for help because the truck's radio was broken.  The ICA claim was denied and a hearing was noticed.  An ALJ held hearings over four days, during which multiple lay witnesses testified and two physicians provided medical opinions as to Joseph's cause of death.

¶4        Kristopher Leon, a coworker of Joseph's, testified that Joseph did not appear angry, depressed or emotionally upset on the day he died.  Mr. Leon testified that employees are prohibited from using a cell phone

2

while driving a company vehicle, but employees are allowed to have a cell phone in the glove compartment or in the back of the vehicle, just not on their person. Mr. Leon also testified that the radio in Joseph's truck was tested and was functioning properly on the day he died. However, Mr. Leon admitted communications between the work trucks and the shop are not logged, and the radios reach only "seven miles or more."

¶5        Dennis Beard, the store manager at the O'Reilly's where Joseph worked, testified that Joseph was investigated three times for disciplinary matters, resulting in one write-up. He was never disciplined or demoted, and his pay and hours were never reduced. Mr. Beard also testified that Joseph had the choice every day to either take a thirty minute lunch break or leave work thirty minutes early, and Joseph would usually skip lunch and eat a snack in the office. According to Mr. Beard, employees were not allowed to have food or drink in the company's truck. The store manager and district manager were not aware that Joseph was diabetic.

¶6        Dr. James Ganem, a board certified cardiologist, reviewed Joseph's medical records from Luke Air Force Base and West Valley Hospital.[1] Dr. Ganem opined to a reasonable degree of probability that Joseph died from a myocardial infarction. Dr. Ganem based his opinion on Joseph's risk factors, which included diabetes, sleep apnea, medical noncompliance, obesity and atherosclerotic cardiovascular disease. The circumstances of Joseph's death were consistent with sudden cardiac death. In addition, Dr. Ganem concluded to a reasonable degree of probability that Joseph's death was not related to work activity including injury, stress or exertion.

¶7        Maricopa County Medical Examiner, Dr. Mark Shelly, performed an external autopsy of Joseph's body in May 2014, and reviewed Joseph's medical records from Luke Air Force Base.[2] Dr. Shelly attributed Joseph's death primarily to hypertension and cardiovascular disease, with diabetes as a contributing factor.

¶8        In the decision upon hearing, the ALJ noted "[b]oth doctors reject [Petitioner's] theory that death was initiated by a diabetic or hypoglycemic episode." The ALJ found "no medical conflict in the record"

---

[1]        The record is unclear whether Dr. Ganem reviewed medical records from Joseph's diabetes doctor, Dr. Hamoudeh.

[2]        Dr. Shelly did not review any medical records from Dr. Hamoudeh.

and no medical evidence linking Joseph's cardiac condition to the stress allegedly caused by his disciplinary events. The ALJ found, "[e]ven if [the ALJ] were to assume that a diabetic episode led to [Joseph's] death, [there is] insufficient evidence that [Joseph's] work conditions (cell phone rule or truck radio condition) contributed" to his death. Accordingly, the ALJ denied Petitioner's claim for death benefits.

¶9        Petitioner filed a timely request for review of award. After review, the ALJ affirmed the award denying death benefits. Petitioner timely appealed to this court. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes (A.R.S.) sections 12–120.21.A.2 and 23–951.A (West 2016),[3] and Rule 10 of the Arizona Rules of Procedure for Special Actions.

**DISCUSSION**

¶10        We deferentially review the ALJ's factual findings, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). To be compensable, an injury must arise out of and occur in the course of employment. *See* A.R.S. § 23-1021. The phrase "arising out of" refers to the origin of the injury, and requires a causal relationship between the employment and the injury. *Murphy v. Indus. Comm'n*, 160 Ariz. 482, 485 (1989). The phrase "in the course of" requires that the injury occurred during the time, place, and circumstances of employment. *Hypl v. Indus. Comm'n*, 210 Ariz. 381, 384 (App. 2005). Petitioner has the burden of establishing both of these elements. *See id.* We view the evidence in the light most favorable to upholding the ALJ's decision. *PF Chang's v. Indus. Comm'n*, 216 Ariz. 344, 347, ¶ 13 (App. 2007).

¶11        We interpret Petitioner's opening brief as arguing that Joseph veered off the road after a hypoglycemic attack and died. Petitioner argues Joseph would not have perished if he had been able to summon help, but could not do so because his truck radio was not functioning and he was not permitted to have a cell phone while driving.[4] However, as addressed

---

[3]        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

[4]        We have done our best to discern Petitioner's arguments, "but we consider waived those arguments not supported by adequate explanation, citations to the record, or authority." *In re Aubuchon*, 233 Ariz. 62, 64-65, ¶ 6 (2013); *see also* Ariz. R. Civ. App. P. 13(a)(7).

above, testimony elicited at the hearing indicated employees are allowed to have a cell phone in the glove compartment or in the back of the truck and Mr. Leon testified that the radio in Joseph's truck was tested and was functioning properly on the day he died.

¶12     Further, Doctors Shelly and Ganem rejected Petitioner's conclusion that Joseph's death was caused primarily by a diabetic or hypoglycemic episode. Rather, both doctors opined that Joseph's death was heart-related. Under A.R.S. § 23-1043.01.A, a heart-related death is not compensable "unless some injury, stress or exertion related to the employment was a substantial contributing cause of the heart-related" death. The causal relationship between work activities and a heart condition is "peculiarly within the province of medical experts." *Emp'rs Mut. Liab. Ins. Co. of Wis. v. Indus. Comm'n*, 15 Ariz.App. 288, 289 (1971). Medical opinions must be based on findings from the claimant's history, medical records, and examinations. *Royal Globe Ins. Co. v. Indus. Comm'n*, 20 Ariz.App. 432, 434 (1973).

¶13     Dr. Ganem reviewed Joseph's medical records and opined Joseph died from a myocardial infarction caused by multiple cardiac risk factors. He further opined Joseph's death was not related to work activity, including injury or stress. Similarly, Dr. Shelly performed an external autopsy on Joseph and attributed Joseph's death primarily to hypertension and cardiovascular disease. Neither doctor found a causal relationship between Joseph's work activities and his heart-related death. Petitioner presented evidence from Specialty Clinic showing Joseph received ongoing treatment from an endocrinologist.[5] However, we defer to the ALJ's factual finding that there was "no medical conflict in the record." *See Young*, 204 Ariz. at 270, ¶ 14.

---

[5]     Petitioner states that Doctors Ganem and Shelly did not review Joseph's medical records from the Specialty Clinic, which she argues show that Joseph was in good health. As discussed above, the record on appeal shows that Dr. Shelly did not review the Specialty Clinic records, and the record is unclear whether Dr. Ganem did so. Nevertheless, both doctors were aware that Joseph suffered from diabetes, but neither doctor attributed Joseph's death primarily to diabetic complications or Joseph's work activities. Petitioner has the burden of establishing that Joseph's death arose out of and in the course of his employment. *Hypl*, 210 Ariz. at 384, ¶ 6.

¶14　　　　Even if a diabetic episode caused Joseph to pull off the road, Petitioner presented insufficient evidence that Joseph's demise arose out of his employment at O'Reilly. If, in fact, Joseph died as a result of a hypoglycemic episode while driving, Mr. Beard testified that Joseph was allowed a thirty-minute lunch break, and it was up to him whether he ate or skipped lunch, and the record is devoid of evidence addressing whether he did or did not eat lunch on the day of his death.

## CONCLUSION

¶15　　　　Because we find that the evidence of record reasonably supports the ALJ's award and decision on review, we affirm the denial of dependent death benefits to Petitioner.



Ruth A. Willingham · Clerk of the Court
FILED: AA