NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BRANDON MICHAEL LUJAN, *Appellant.*

No. 1 CA-CR 24-0443

FILED 12-18-2025

Appeal from the Superior Court in Maricopa County
No. CR2021-129581-001
The Honorable Joseph S. Kiefer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Legal Advocate's Office, Phoenix
By Michelle Dewaelsche
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

**T H U M M A**, Judge:

¶1        Defendant Brandon Lujan (Lujan) appeals his convictions and natural life prison sentences for murdering his brother, M.L., his father, L.L., and his mother, I.L.[1] Lujan argues that specific acts of prosecutorial error and cumulative error deprived him of his rights to due process, to present a defense and to a fair trial. Lujan also argues the superior court erred in denying his motion to preclude late disclosure of witness testimony and in denying his requested jury instructions and related motion for a mistrial. Because Lujan has shown no error, his convictions and sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        Just before midnight on August 7, 2021, Lujan arrived at his parents' home in Phoenix with his wife and two children. Once there, Lujan shot and killed his brother outside the home and shot and killed his mother and father inside the home. Lujan's wife drove away with their two children. Lujan then apparently brought his brother's body inside the home and left. A neighbor who heard the shots called 9-1-1, but responding officers could not locate where the shots came from.

¶3        The next day, Lujan checked himself into the United States Department of Veterans Affairs hospital, reporting that he was suffering from anger issues. Lujan was provided a room and, after speaking with several workers there, he confessed to a nurse that he had killed his family. When Phoenix Police Officers arrived, Lujan told them he shot his brother, mother and father the day before. Officers went to Lujan's parents' home and confirmed his parents and his brother had been shot and were dead. Lujan was arrested and indicted on three counts of first-degree murder. He has remained in custody ever since.

---

[1] Initials are used to protect the victims' and witness' privacy. *State v. Maldonado*, 206 Ariz. 339, 341 n.1 ¶ 2 (App. 2003).

**¶4**        The case was designated complex, and the trial was continued several times, including time to determine whether a guilty except insane (GEI) defense was viable. In April 2023, the court granted Lujan's request for evaluation related to a possible GEI defense. *See* Ariz. Rev. Stat. (A.R.S.) § 13-502 (2025).[2]

**¶5**        On April 30, 2024, a week before trial, the State provided a supplemental disclosure about statements made in a second interview of Lujan's brother, T.L. T.L. indicated that when he was interviewed years earlier (soon after his parents and brother were shot) he was still in shock from their deaths. Specifically, during cross-examination, when T.L. was asked why he initially said Lujan never abused alcohol and drugs, T.L. mentioned the detectives "came to me slightly under two weeks from when my family was murdered" and he "just wanted to answer their questions because [he] had a lot [he] was dealing with."

**¶6**        T.L. stated that, having thought further, and after speaking with the police, he had revealed additional information in his second interview. Among other things, T.L. told officers (contrary to his initial interview) that Lujan used methamphetamine. T.L. explained that his motivation to come forward with this new information stemmed from him remembering "the severity of [Lujan] getting away with things that he always got away with again."

**¶7**        On May 1, 2024, Lujan filed a motion arguing T.L. should "be strictly prohibited from testifying to anything contained in the attached eleventh-hour supplement." The court denied the motion, noting the disclosure was "arguably six or seven days prior to the trial date" and there was "fair time and opportunity here to prepare for and respond to even this new disclosure."

**¶8**        During the 19-day trial, which began on May 6, 2024, the State presented testimony from various witnesses about Lujan's strained relationships with his family and wife, and his previous encounters with law enforcement. The defense countered and mentioned Lujan's alleged military sexual trauma (MST), and relied on their theory, through expert testimony, that Lujan met the GEI criteria.

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**¶9**      Lujan moved for a mistrial, arguing that testimony by T.L. and the State's expert, Dr. Dana Kirby, misstated the law. The court denied the motion. The court also denied Lujan's requested corrective jury instruction, relying instead on the court's standard final instructions. The jury deliberated and found Lujan guilty of all three counts of first-degree murder, rejecting his GEI defense for all three counts. Lujan was sentenced to natural life in prison on all three convictions This court has jurisdiction over Lujan's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031 and 13-4033(A).

## DISCUSSION

### I.    Lujan Has Not Shown Reversible Error Resulting from Prosecutorial Error.

**¶10**      Lujan argues that the State engaged in numerous instances of prosecutorial error[3] by "asking argumentative questions that impugned the integrity of a defense expert; attempting to mislead the jury; misstating the evidence in closing; and vouching." "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Morris*, 215 Ariz. 324, 335 ¶ 46 (2007) (citation omitted); *see also State v. Murray*, 250 Ariz. 543, 548 ¶ 13 (2021). "Prosecutorial misconduct constitutes reversible error only if (1) misconduct exists and (2) 'a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial.'" *Morris,* 215 at 335 ¶ 46 (citation omitted); *see also State v. Hughes*, 193 Ariz. 72, 80 ¶ 32 (1998) (similar).

---

[3] Lujan alleges several instances of prosecutorial error, which he often refers to as misconduct. However, the Arizona Supreme Court recognized the difference between the terms and noted "courts should differentiate between 'error,' which may not necessarily imply a concurrent ethical rules violation, and 'misconduct,' which may suggest an ethical violation." *Matter of Martinez*, 248 Ariz. 458, 470 ¶ 47 (2020). Given the distinction between the two, this court uses "error" throughout, given that the prosecutor's conduct appears better characterized as alleged error. *See State v. Murray*, 250 Ariz. 543, 548 ¶ 12 (2021).

¶11        The standard of review depends on whether Lujan objected. *See State v. Gallardo*, 225 Ariz. 560, 568 ¶ 35 (2010) (citing cases). If Lujan objected, this court reviews for harmless error, which means the court reviews for error, but will not reverse if the State establishes beyond a reasonable doubt that the error did not contribute to or affect the verdict. *Id.* If Lujan did not object, this court reviews for fundamental error. *Id.* Fundamental error is error that goes to the foundation of the case and "'takes from the defendant a right essential to his defense.'" *State v. Escalante*, 245 Ariz. 135, 140 ¶ 13 (2018) (citation omitted). For fundamental error, Lujan has the burden to establish that (1) error occurred, (2) the error was fundamental and (3) the error caused him prejudice. *State v. James*, 231 Ariz. 490, 493 ¶ 11 (App. 2013) (citing cases).

### A.        The State's Examination of Lujan's "Cold" Expert Was Not Prosecutorial Error.

¶12        Lujan called psychologist Dr. Aleksandr Levitan to testify as a "cold" expert about MST. *See State v. Salazar-Mercado*, 234 Ariz. 590, 592 ¶ 6 (2014) (concluding Arizona Rule of Evidence 702 "does not bar 'cold' experts from offering general, educative testimony to help the trier of fact understand evidence or resolve fact issues."). Lujan argues that, on cross-examination, the State asked Dr. Levitan "exceedingly general and irrelevant questions about the military." Those questions, Lujan notes, included "how many people are in the military right now?", "[h]ow many active service members are there right now in the military?" and "[w]hat are the branches of the military?" Lujan claims that these questions improperly undercut his GEI defense, "made a mockery" of Dr. Levitan and implied that he "was incompetent and unprepared to testify." Lujan also argues that Dr. Levitan did not rely on the information sought in these questions, which were "irrelevant to" MST.

¶13        Lujan did not object to these questions, meaning this court will review for fundamental error resulting in prejudice. *Gallardo*, 225 Ariz. at 568 ¶ 35 (citing cases). Lujan has shown no fundamental error. Given Dr. Levitan's direct testimony "as an expert in military sexual trauma," the States' questions about demographics of the military on cross-examination were not irrelevant or unsupported by admissible evidence. *See* Ariz. R. Sup. Ct. 42, ER 3.4(e). Moreover, it is not unreasonable to believe that an expert testifying about MST would have such knowledge of the military. *See State v. Bailey*, 132 Ariz. 472, 478 (1982). Thus, Lujan has shown no prosecutorial error regarding the State's questions during cross-examination, of Dr. Levitan. *Gallardo*, 225 Ariz. at 568 ¶ 35 (citing cases).

**B.      Lujan Has Not Shown That the State Misled the Jury.**

**¶14**      Lujan next argues that the State "elicited false and misleading testimony from material witnesses and failed to notify the court of the error or to correct the testimony" in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). *Napue* held that a "conviction knowingly 'obtained through use of false evidence'" violates due process. *Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025). To show such a due process violation requiring a new trial, Lujan has the burden to show "that the prosecution knowingly solicited false testimony or knowingly allowed it 'to go uncorrected when it appear[ed].'" *Id.* Lujan has failed to do so here.

**¶15**      Lujan first argues that the State misled the jury when it asked a detective whether "a pipe was found on [Lujan]" during an unrelated arrest in Eloy, with the detective answering, "I believe so." The State did not ask any follow-up about the pipe. Arguing that the pipe was tested and marijuana was found on the pipe, Lujan argues this exchange "can only have been a ploy to mislead the jury in the hope that defense counsel would not address it on redirect."

**¶16**      Lujan's counsel did not object to this question, meaning this court reviews for fundamental error resulting in prejudice. *See Gallardo*, 225 Ariz. at 568 ¶ 35 (citing cases). Counsel did address the issue on redirect, however, asking the detective whether he was "aware that the pipe was tested and what the results were that were on the pipe?" (he answered "No.") and then asked, "So you're not aware that it was marijuana on the pipe?" (again, the detective answered "No."). After being given the police report to review, the detective confirmed that the pipe tested positive for marijuana.

**¶17**      Lujan asserts that, even though defense counsel corrected the claimed error, this "does not alleviate the prejudice to the defense." Lujan speculates that the efforts of his trial attorney, on redirect, were "likely to have appeared combative to jurors. Thus, the actions defense counsel had to take to correct the error inured to [Lujan's] detriment by casting counsel in an unfavorable light." But Lujan cites nothing in the record to support this "unfavorable light" suggestion. Moreover, because Lujan resolved any inaccurate implication on redirect, he fails to show that any false testimony went uncorrected, resulting in fundamental error or a denial of his due process rights. *See Glossip*, 604 U.S. at 246; *Gallardo*, 225 Ariz. at 568 ¶ 35 (citing cases).

¶18        Lujan next argues that the State misled the jury when it asked Dr. Jack Potts, a forensic psychiatrist, called to support his GEI claim, questions relating to Arizona Rule of Criminal Procedure 11, which governs competency proceedings. Lujan argues that, because there had never been a Rule 11 evaluation in this case, the State's "questions could only have been intended to mislead the jury into inferring that Dr. Potts did not review all of the records."

¶19        During his direct testimony, Dr. Potts mentioned Rule 11 when asked to explain "competency and restoration." When defense counsel later asked, "to spell that out" and describe "what we mean" by Rule 11, Dr. Potts did so, adding that he had "done thousands of competency evaluations." During cross-examination, the prosecutor asked whether Lujan had undergone a competency evaluation, and Dr. Potts answered, "I don't believe so, but I wasn't involved if he did."

¶20        When asked if he had been provided any competency records, Dr. Potts responded, "I was provided all the records I had. I don't know – I don't believe he had a Rule 11 evaluation, counsel. You would know that better than I." From the record provided, Lujan's counsel attempted to interrupt this line of questioning, and the court stated, "[o]verruled if there's an objection. You may ask your question." The prosecutor then requested that the defense attorney assigned to the witness make the objections. That defense attorney then seconded the objection. The court again stated, "[u]nderstood. Overruled. Go ahead and restate your question." Referencing Dr. Potts' testimony on direct about Rule 11, the prosecutor followed up by asking, "to your knowledge, there has never been a competency issue with this defendant?" Dr. Potts responded: "I don't know if there's been a competency issue ever. I was just explaining that as part of the role I had. [P]reviously there has not been a Rule 11 evaluation to my knowledge of this defendant." Nothing on this record shows that these questions and answers misled or otherwise improperly influenced the jury's verdicts or were error.

### C.    Lujan Has Not Shown Fundamental Error in the Prosecutor's Closing Arguments.

¶21        Lujan argues the prosecutor misstated the evidence in closing, focusing on evidence of Lujan's methamphetamine use. Lujan claims that, during closing arguments, the prosecutor "all but ignored the urine test taken 9 hours after the crimes and entirely ignored Dr. Kirby's testimony that it takes 24 hours for meth to metabolize out of a person's system." Lujan argues "[t]he prejudice is extreme," because T.L. was allowed to

testify that Lujan was under the influence of methamphetamine at the time of the murders, meaning Lujan was "forced" to defend against the "almost wholly unsupported" notion of methamphetamine influence.

**¶22**        Lujan did not object to the prosecutor's closing arguments, meaning this court reviews for fundamental error. *See Gallardo*, 225 Ariz. at 568 ¶ 35. Moreover, attorneys are generally "given wide latitude in closing arguments and may draw reasonable inferences from the evidence." *State v. Arias*, 248 Ariz. 546, 563 ¶ 67 (App. 2020) (citation omitted); *see also Hughes*, 193 Ariz. at 87 ¶ 69; *State v. Ramos*, 235 Ariz. 230, 237 ¶ 22 (App. 2014). T.L. was asked about his recently disclosed view that Lujan used methamphetamines when asked by Lujan's counsel on cross-examination and then on redirect by the State. On redirect, T.L. testified, without objection, that he had never seen Lujan use methamphetamines, but he "[m]ost definitely" believed that Lujan was using methamphetamines based on his personal observations.

**¶23**        The prosecutor's closing arguments that Lujan argues were improper include statements that the prosecutor did not know that Lujan "smoked meth, because I don't know that. We don't have a tox screen that says that." Then, on rebuttal closing, the prosecutor "[a]gain" asserted that "no one is saying they know the Defendant ever used meth . . . The important point of this is[4] if Defendant was a lifelong meth user," then focusing on his "lifelong extreme cannabis use[]. And that he had an alcohol use disorder," which "exacerbates his mental illness."

**¶24**        These arguments could have been rephrased, particularly the statement about what the prosecutor personally knew ("I don't know that"), rather than what the trial evidence showed. But "it 'is not enough that the prosecutors' remarks were undesirable.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted). Instead, the question is whether the arguments were improper and "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181 (citation omitted). Moreover, the superior court instructed the jurors that what counsel said during opening and closing was "not evidence," and jurors are presumed to follow the court's instructions. *See Ramos*, 235 Ariz. at 238 ¶ 30. On this record, Lujan has shown no fundamental error in the prosecutor's closing arguments.

---

4 Although the transcript reads as if a "not" was omitted here, the parties have not sought clarification or correction on that basis.

### D. Lujan Has Not Shown That the Prosecutor Improperly Vouched for Its Expert During Closing Argument.

¶25　　　　Lujan argues that, during closing argument, the prosecutor improperly vouched for the State's expert, Dr. Kirby, by insinuating that he reviewed more "'voluminous records, detailed reports and addendums' than" the defense experts. Again, Lujan made no objections, meaning this court reviews for fundamental error. *See Gallardo*, 225 Ariz. at 568 ¶ 35.

¶26　　　　During cross-examination, the prosecutor asked Dr. Potts about the documents he reviewed and whether he had written a supplemental report. Dr. Potts mentioned that, even though he received more disclosure after he wrote his report, his "opinions ha[d] not changed based on the much more data [he] received." Although admitting he did not supplement his report, Dr. Potts stated that he "reviewed all the documents that everyone else reviewed and [his] opinions hadn't changed."

¶27　　　　During closing argument, the prosecutor noted, correctly, that Dr. Kirby "had more voluminous records, detailed reports and addendums" than Lujan's expert, Dr. Potts. The prosecutor also noted that, although Dr. Kirby prepared a main report and two addenda (as "more records became available for review"), Dr. Potts, despite receiving more information, "didn't do any addendums." During rebuttal closing, the prosecutor argued that Dr. Potts "made an opinion, and then no matter what was presented to him as this case progressed . . . he never changed his opinion and he really didn't consider anything else." These arguments fairly reflect the trial evidence. *See State v. Johnson*, 247 Ariz. 166, 205 ¶ 162 (2019). And Lujan has not shown that these arguments constitute impermissible vouching. *See Ramos*, 235 Ariz. at 238 ¶ 26 ("'There are two types of prosecutorial vouching: (1) when the prosecutor places the prestige of the government behind its witness, and (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony.'").

### E. Lujan Has Shown No Cumulative Prosecutorial Error.

¶28　　　　Lujan argues that, even if these alleged instances of prosecutorial error are not themselves reversible, "the cumulative effect of the misconduct was a denial of due process." Lujan further alleges that these errors were "pervasive" and "undermin[ed] every aspect of the GEI defense." Reversible prosecutorial error may result "if the cumulative effect of the alleged acts of misconduct 'shows that the prosecutor intentionally

engaged in improper conduct and did so with indifference, if not a specific intent, to prejudice the defendant.'" *State v. Bocharski*, 218 Ariz. 476, 492 ¶ 74 (2008) (citation omitted); *see also Arias*, 248 Ariz. at 556 ¶ 32. But "[a]bsent any finding of misconduct, there can be no cumulative effect of misconduct sufficient to permeate the entire atmosphere of the trial with unfairness." *Bocharski*, 218 Ariz. at 492 ¶ 75. Because Lujan has failed to show error, he cannot show that the cumulative effect of error warrants reversal.

## II.     Lujan Has Shown No Error in the Superior Court's Denial of His Motion to Preclude T.L.'s Newly Disclosed Testimony.

**¶29**     Lujan contends that the superior court's denial of his motion to preclude T.L.'s statement, "disclosed just days before voir dire began, was an abuse of discretion." This failure by the court, Lujan suggests, "placed the defense in the position of having to ask T.L. about the statement regarding meth," and "placed the defense in a lose-lose situation." Lujan urges that this failure led to the State's expert changing her opinion and "snowballed" into the State "arguing in closing that [Lujan] faked his MST and could not be found GEI because of long-term meth use." Lujan argues that, even though defense counsel had time to prepare for cross-examination, this "does not dispel the error or render the late disclosure harmless under Rule 15.7(b)(1)."

**¶30**     The State has a continuing disclosure obligation and, "[u]nless otherwise permitted, all disclosure . . . must be completed at least 7 days before trial." Ariz. R. Crim. P. 15.6(a) & (c). Whether the superior court properly excuses late disclosure is reviewed for an abuse of discretion. *See State v. Moody*, 208 Ariz. 424, 454 ¶ 114 (2004) (citing cases); *see also State v. Tucker*, 157 Ariz. 433, 439 (1988). Moreover, preclusion of testimony is "'a sanction of last resort'" and should be imposed if "'other less stringent sanctions are not applicable.'" *Moody*, 208 Ariz. at 454 ¶ 114. Allowing late-disclosed evidence is proper if the "the failure to comply was harmless" or "the party could not have disclosed the information earlier with due diligence and the party disclosed the information immediately upon its discovery." Ariz. R. Crim. P. 15.7(b)(1) & (2).

**¶31**     When the State "learned new information" about what T.L. would testify to at trial, it "immediately disclosed" that information to Lujan. The State made that disclosure to Lujan on April 30, 2024, when trial was scheduled to begin on May 6, 2024. Given disclosures are to be updated at least seven days before trial begins, Ariz. R. Crim. P. 15.6(d)(1), this disclosure appears to have been one day late, Ariz. R. Crim. P. 1.10(a)(1). At a May 2, 2024 status conference, the court discussed the issue. During that

hearing, the court found that the evidence would not be precluded based on the timeliness of disclosure. As noted above, the disclosure was "six or seven days prior to the trial date" and T.L. did not testify on the first day of trial. In fact, T.L. did not testify until May 21, 2024. The superior court did not err by denying Lujan's disclosure objection after concluding there was adequate time to prepare for and respond to the new disclosure.

**¶32**     There is no indication that the State could have disclosed the information earlier. *See* Ariz. R. Crim. P. 15.7(b)(2); *see, e.g.*, *State v. Zuck*, 134 Ariz. 509, 514 (1982) (disclosure and testimony of chief witness two days before trial was not error because counsel was allowed to interview the witness and take other curative action, which counsel did not do). There is also no indication that Lujan was prejudiced, negating his argument that the court abused its discretion. *See Tucker*, 157 Ariz. at 439 (citing cases).

## III.    The Superior Court Did Not Err in Denying Lujan's Request for a Corrective Jury Instruction or His Related Motion for Mistrial.

**¶33**     Lujan argues testimony by T.L. and Dr. Kirby, addressing the "extraneous matter of punishment," required the superior court to give a curative jury instruction. This court reviews the superior court's decision to give or refuse a requested jury instruction for an abuse of discretion. *State v. Dann*, 220 Ariz. 351, 363-64 ¶ 51 (2009) (citing cases); *see also State v. Saiers*, 196 Ariz. 20, 21 ¶ 2 (App. 1999) (citing cases). Further, any challenge to a jury instruction is "evaluated in light of all of the instructions given." *State v. Cannon*, 148 Ariz. 72, 80 (1985) (citation omitted); *see also Dann*, 220 Ariz. at 363 ¶ 51 (citing cases). Lujan has shown no error here.

**¶34**     During cross-examination of T.L. by Lujan's counsel, when asked why he delayed telling the police that Lujan faked his MST to get government benefits, the following exchange took place:

> [Question by Lujan's attorney:] And when you were talking to [two detectives] about the homeless shelter that you live in in Washington, that's the homeless shelter where the Veteran supposedly cooked up this idea, you never mentioned this to [the detectives].

> [T.L.'s Answer:] It was a capital case. They were going for the death penalty. They had no – it had no relevance.

11

Lujan did not object and, after Lujan's attorney asked ten more questions and finished cross-examination, the court held a bench conference. Noting the "capital case" comment, the court discussed with the attorneys appropriate possible action. Speculating that the reference was to a time when the State was contemplating "a death penalty notice and that didn't end up happening," the court stated it "would like to just instruct the jury very briefly at this point, at some point during the cross-examination of his reference from the witness to something being capital or capital case, I direct you to disregard those comments." Lujan's counsel responded, "[f]air enough, Judge." To remove all doubt, when the court asked, "[i]s that okay?", Lujan's counsel answered, "[y]es." The court then gave that curative instruction to the jury, and redirect began. Before redirect, however, T.L. commented on his recent interview with detectives about the new information relating to Lujan and remembered this information because he "realized the severity of [Lujan] getting away with things that he always got away with again." No objection or curative instruction was given with this statement.

¶35         A little over a week later, Lujan requested the following jury instruction regarding T.L.'s statements:

> The jury is not to consider[] punishment. You have heard from a witness that a finding of guilty except insane in this case will mean Mr. Lujan "gets away with" the charged conduct. That is not the law. Mr. Lujan will not get away with anything if you make a finding of guilty except insane.

¶36         A few days later, when Dr. Kirby was testifying about the GEI defense, the State asked: "is it enough that somebody has a mental health diagnosis, a mental health disease, defect, is that alone enough to find someone is guilty except insane?" Dr. Kirby answered: "Absolutely not. And sure or [sic] hope the jury could appreciate that that would be a scary world to live in, where just having a mental illness would give you carte blanche to commit crimes without accountability. That's not the legal standard of insanity." Lujan made no contemporaneous objection. The next day, however, Lujan requested that the court give the following instruction to the jury: "Dr. Kirby misstated the insanity law to you. A finding of insanity does not mean Mr. Lujan has '*carte blanche* to commit crimes without accountability.'"

¶37        The court mentioned it was concerned about the potential prejudice that would arise if it incorporated Lujan's proposed instructions and felt the best way to resolve the issue was to instruct the jury not to speculate about punishment, as that was left to the judge. Lujan then moved for a mistrial, based on this same testimony, which the court also denied. The final instruction the court gave included the directive that the jury "must not consider the possible punishment when deciding on guilt; punishment is left to the judge."

¶38        There was no timely objection, meaning the review here is for fundamental error. *See Gallardo*, 225 Ariz. at 568 ¶35. The superior court timely cured the misstatement, without objection from Lujan, regarding T.L.'s testimony, and on appeal, he has shown no error in the court doing so, or that the court needed to do anything more or different. For Dr. Kirby's and T.L.'s passing statements, Lujan has similarly shown no error by the superior court in denying his requested jury instruction and his motion for mistrial.

¶39        Lujan acknowledges, but attempts to distinguish, *State v. Cornell*, 179 Ariz. 314 (1994) and *Moody*, 208 Ariz. 424 as not "squarely address[ing] the issue here." Lujan cannot argue that the questions (as opposed to a passing portion of the answers) were objectionable. Accordingly, this case did not involve "improper questions" that *Cornell* then concluded, on the facts presented, "did not amount to fundamental error." *Cornell*, 179 Ariz. at 330. Nor did this case involve an improper closing argument, as in *Moody*, where defense counsel timely objected, the court sustained that objection and directed the jury to "'disregard the last comments by the prosecutor,'" and the court still found defendant had not shown reversible error. *Moody*, 208 Ariz. at 459-60 ¶¶ 148-152.

¶40        As the State notes, the Arizona Supreme Court "has consistently held that any instruction on the consequences of an insanity verdict is improper." *Saiers*, 196 Ariz. at 21 ¶ 5. And although there may be narrow exceptions to that directive in "certain limited circumstances," *Shannon v. United States*, 512 U.S. 573, 587 (1994), Lujan has not shown that the superior court here had to do more than what it did.[5] On this record,

_____

[5] Lujan's reference, during oral argument before this court, to the recent decision in *United States v. Dencklau*, Nos. 22-30068, 22-30069, 2025 WL 3310761 (9th Cir. Nov. 28, 2025) does not alter this analysis. That case approved a closing instruction on potential punishment that closely tracks the instruction given by the superior court in this case. *Dencklau*, 2025 WL

Lujan has shown no abuse of discretion in the superior court denying his requested instruction or in the other instructions the court gave. *See Ramos*, 235 Ariz. at 238 ¶ 30. Because there was no instructional error, Lujan has shown no error in the court's denial of his requested jury instruction.

**¶41** Turning to his motion for mistrial, an order denying such a motion is "within the sound discretion of the [superior] court." *Gallardo*, 225 Ariz. at 564 ¶ 6 (citation omitted). "'A declaration of a mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted.'" *Dann*, 220 Ariz. at 363 ¶ 48, 363 ¶ 50 (citation omitted); *Saiers*, 196 Ariz. at 23 ¶ 11 (same).

**¶42** In arguing the superior court was required to grant his motion for mistrial, Lujan relies on *State v. McLoughlin*, 133 Ariz. 458 (1982). Lujan claims that, under *McLoughlin*, once improper testimony is before the jury, a new trial is required. Lujan misinterprets *McLoughlin*. A new trial was necessary in that case because a third party told a juror that if the defendant were found not guilty, the defendant would go free. *Id.* at 460. That information was then spread to the rest of the jury. *Id.* The court determined that Ariz. R. Crim. P. 24.1 applied, and that a new trial was warranted "'if it cannot be concluded beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict.'" *Id.* at 461 (quoting *State v. Poland*, 132 Ariz. 269, 283 (1982)). Although the jury had been instructed not to consider possible punishment, the court found that the jury's conduct suggested it had not followed that instruction, requiring a new trial. *See McLoughlin*, 133 Ariz. at 461.

**¶43** Unlike *McLoughlin*, there is no indication here that the testimony from the witnesses or conduct from the jurors implied that they did not follow the instructions they were given. Again, this court presumes the jury followed the instruction not to consider punishment. *See Ramos*, 235 Ariz. at 238 ¶ 30 (citing cases). For these reasons, Lujan has failed to show that the superior court erred in denying his motion for mistrial.

---

3310761, at * 10. A primary focus of that appeal was on instructions about how the jury should construe testimony of cooperating witnesses who had entered plea agreements. *Id.* And *Dencklau* affirmed the convictions, finding that the instructions properly kept "the jury focused on its factfinding mission" and did not constitute an abuse of discretion. *Id.* at *11.

**CONCLUSION**

¶44      Lujan's convictions and resulting sentences are affirmed.

